ROSA G. BOYLE vs. BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   November 16, 1910. — February 28, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Evidence,* Papers produced on call of adverse party.   *Negligence.   Street Railway.*

The rule, which has prevailed in this Commonwealth, that, if at a trial a paper is
called for and is inspected after having been produced by the adverse party, it
can be used as evidence by the party producing it, does not make such a paper
evidence for the party calling for it and inspecting it, and it cannot be put in
evidence by that party unless it is otherwise admissible.

At the trial of an action against a corporation operating a street railway, for per-
sonal injuries sustained when the plaintiff was a passenger on a car of the de-
fendant, which left the rails upon a disused railroad bridge, went down a bank
a distance of seven feet and turned over on its side, the conductor of the car
testified that as the car left the bridge and began to go down grade he " ob-
served a grating sound and immediately the car tipped . . . took an unusual tilt
and settled on its side," and it went off the bank " immediately." From another
portion of the testimony of the same witness the defendant's counsel contended
that the conductor made the statement that in his opinion the cause of the acci-
dent was oscillation.   It was *said,* that a jury would be warranted in finding that
the conductor would not have stated that in his opinion the cause of the accident
was oscillation if he had heard the grating sound to which he testified.

TORT for personal injuries sustained by the plaintiff on Au-
gust 31, 1904, when she was a passenger on an electric street
car of the defendant, which was derailed upon a disused rail-
road bridge on Dorchester Street, in that part of Boston called
South Boston, at a place where that street was being widened
and its grade lowered, went down a bank a distance of seven feet
and turned over on its side.   Writ dated December 27, 1904.

At the trial in the Superior Court before *Harris,* J., the jury
returned a verdict for the plaintiff in the sum of $11,800.   The
defendant alleged exceptions, all of which except the one con-
sidered in the opinion have been made immaterial by the
decision of this court sustaining that exception.

*W. G. Thompson,* (*G. E. Kimball* with him,) for the defendant.
*W. Flaherty,* for the plaintiff.

LORING, J.   We are of opinion that the exception must be
sustained which was taken to the admission in evidence of a
typewritten statement of an examination of the motorman and
conductor of the car here in question.   This examination was
made by one Shea, who was employed in the defendant's claim
department, a few days after the accident.

Just before the end of the direct examination of the motorman (who was called as a witness by the defendant), this statement of Shea's examination and the accident report made by the same two employees were marked for identification. At the end of the motorman's examination the counsel for the plaintiff asked for the "report," by which he must be taken to have meant the accident report. The counsel for the defendant objected to giving it to him then, saying that he had not a right to read it until he cross-examined, and the presiding judge said to the counsel for the plaintiff that he had no right to it unless it went in evidence. Thereupon a colloquy ensued, the meaning of which is not altogether clear. But as we construe it the counsel for the defendant said that if the report which the counsel for the plaintiff called for was to be put in evidence he would produce " the whole paper." Then the counsel for the plaintiff said that he would like the " reports and all the rest of them." Thereupon the defendant's counsel handed the plaintiff's counsel the accident report and the typewritten statement of the examination conducted by Shea. Later the counsel for the plaintiff began to read the Shea statement to the jury and, the defendant's counsel objecting, the presiding judge ruled that if a paper is called for and used " as a basis for cross-examination it goes in." To this ruling the defendant took an exception. The counsel for the plaintiff then had the conductor recalled to the witness stand and proceeded to read from the typewritten statement of Shea's examination this question as a question put by Shea to the conductor at the time Shea examined him as to the accident: " The cause of the accident in your opinion was what? " He also began to read the conductor's answer to it, when the defendant's counsel objected on the ground that it was " mere theorizing." The counsel for the plaintiff stated that he proposed " to contradict his [the conductor's] statement by showing [that] he made a different statement." The defendant's counsel said that as to fact he had no objection, but that the conductor's theories were not competent. The presiding judge then made this ruling: " I think so far, he has not made any statement that tends to contradict anything he has said here. It is competent on that ground." To this the defendant excepted. The Shea statement then was admitted in evidence under the defend-

ant's exception and was read to the jury and was sent with them into the jury room.

The Shea statement was signed by Leach, the conductor, but not by Ridge the motorman.   So far as Leach's statements there set forth contradicted the testimony given by Leach on the witness stand, it was competent as a written statement signed by Leach which contradicted his testimony and the defendant's counsel did not object to so much of the Shea statement being admitted in evidence.   But, so far as the Shea statement contradicted Ridge, it was not competent because it never had been adopted by Ridge as his statement.

It is now contended by the plaintiff's counsel that the Shea statement was produced by the defendant upon the promise of the plaintiff to put it in evidence.   While the bill of exceptions on this point is not entirely clear, we do not on the whole so construe it.   And we are confirmed in this by the fact that when it was admitted in evidence it was not admitted by the presiding judge on that ground.

It is stated in *Clark* v. *Fletcher*, 1 Allen, 53, and *Long* v. *Drew*, 114 Mass. 77, on the authority of 1 Greenl. Ev. § 563, that if a paper is called for by one party and is inspected by him it becomes evidence for both parties at the trial.   We assume that the ruling of the presiding judge was made on the authority of that statement.   But that statement of Professor Greenleaf does not mean that a party can make a paper (not otherwise competent as evidence) competent evidence in his own behalf by calling for it and inspecting it on its being produced on his call.   All that is meant by that statement is that if one party calls for a paper and inspects it, it is thereby made evidence in favor but not against the party who produces it.   When Professor Greenleaf said that if it is produced and inspected it becomes evidence for both parties he had in mind the case of a paper which was evidence against the party producing it, and speaking of such a case he said that if the paper is called for and inspected it becomes evidence for both parties.   As we have said, there is no basis for the contention that if a paper is not competent as evidence a party can make it so by calling for it and inspecting it.

The English rule on which *Clark* v. *Fletcher*, 1 Allen, 53,

and *Long* v. *Drew*, 114 Mass. 77, were founded was without question that if a paper was called for and inspected it became evidence for but not against the party producing it. See *Calvert* v. *Flower*, 7 C. & P. 386; 3 Wigmore, Ev. § 2125, note 2.

Under the Massachusetts rule the plaintiff had no right to put the Shea statement in evidence against the objection of the defendant. The presiding judge in one portion of his charge told the jury that " the statements of two of the men have been presented to you. They are offered upon the theory, coming in that way, that they present contradictions to the statements that the witnesses have had [made] here. Whatever they contain, they are not substantive and affirmative evidence of the truth of what they contain, but they are only evidence to enable you to judge as to how much credibility you will give to the testimony upon this witness stand of that same witness whose statements they contain or purport to contain. So that in considering those, they have to be considered in conjunction with the witness who is said to have made the statement, and it is out of the statement and his whole testimony that the truth of that witness as to the story he tells, and just what effect and weight you give to it, is to be determined."

This did not cure the error in admitting the whole of the Shea statement for several reasons. In the first place none of the Shea statement was admissible to contradict Ridge. In the second place, so far as Leach is concerned, from what is stated in the bill of exceptions the statement must be taken to have contained matters prejudicial to the defendant other than the parts which contradicted Leach's testimony. And lastly, in a later part of his charge the judge told the jury that the Shea statement could be used as substantive evidence. He said: " In the papers that are to be submitted to you, and here and there through the evidence in the case, there are and there have been references to injuries to other people in this same accident. Those are not of any consequence as far as you are concerned, except in one single respect, and that is whether they indicate to your minds, with the other description of the falling of the car, etc., that the force that was applied to this plaintiff's person would be adequate to account for the things that she says have come to her since."

We have been asked by the defendant to reconsider the rule of practice established in *Clark* v. *Fletcher*, 1 Allen, 53, and *Long* v. *Drew*, 114 Mass. 77, on the ground that it is not founded on principle and is against the weight of modern practice. It seems to be law in Delaware, Georgia, Maine, Mississippi, Pennsylvania and Texas (see 3 Wigmore, Ev. § 2125, note 4). It has been decided not to be law in New York and Connecticut and has been repudiated by statute in California, Idaho, Iowa, Montana and Nebraska (see 3 Wigmore, § 2125, note 5) ; and there is some reason to suppose that it is not now law in England (see 3 Wigmore, § 2125, note 3). It has been said that the rule has been repudiated in New Hampshire. But the result of the practice authorized in *Austin* v. *Thomson*, 45 N. H. 113, is in effect the same as the Massachusetts rule. It is not necessary to go into this question in the case at bar, for if calling for and perusing a paper does not make it evidence for either party, the presiding judge was wrong in admitting the Shea statement.

We ought to add in view of a possible new trial that we do not agree with the defendant's counsel in his contention as to the statement made by Leach that in his opinion the cause of the accident was oscillation. He testified on the stand that as the car left the bridge and began to go down grade he "observed a grating sound and immediately the car tipped . . . took an unusual tilt and settled on its side," and it went off the bank "immediately." A jury would be warranted in finding that Leach would not have said that in his opinion the cause of the accident was oscillation if he had heard the grating sound which he testified to.

*Exceptions sustained.*