THE J. S. YOUNG COMPANY, a Body Corporate, and MAC ANDREWS AND FORBES COMPANY, a Body Corporate, *vs.* STATE OF MARYLAND, for the use of Rosa Kabat, Widow, and Helen M. Kabat and Teresa Kabat, Infants, by their Mother and Next Friend, Rosa Kabat, and JOSEPH KABAT AND JOHN KABAT.

*Negligence: employer and employee; duty of employer; burden of proof; "no evidence;" actionable negligence.*

An employer is bound to use due and reasonable diligence in providing the proper means, appliances and instruments for doing the work assigned to his employees. p. 251

An employer is not justified in knowingly and negligently exposing the employee to any extraordinary or unreasonable peril in the course of his employment, against which, from the want of knowledge or skill, the employee could not, by the use of ordinary care or prudence, guard himself. p. 251

In an action by equitable plaintiffs against an employer for damages for a death claimed to be due by his negligence it is incumbent upon the plaintiffs not only to offer evidence legally sufficient to prove actionable negligence on the part of the defendant, but they are bound to offer evidence legally sufficient to show that the negligence charged was the cause of the death. p. 252

Actionable negligence is an act, or omission of duty, which is the approximate cause of the injury.                    p. 252

An employee was engaged in the boiler house of a factory located on the edge of the harbor; where there was a violent explosion of a steam pipe; the employee was apparently not injured by this explosion and escaped to a place of safety; he returned to the place of the accident and was not seen again until found dead in the waters of the harbor, with his body scalded as if by escaping steam. *Held,* that there was no evidence introduced, of negligence on the part of the defendant proper for the consideration of the jury.                    p. 253

*Decided January 11th, 1912.*

Appeal from the Baltimore City Count (Dobler, J.).

The cause was argued before Boyd, C. J., Briscoe, Pearce, Burke, Thomas, Pattison and Urner, JJ.

*W. L. Rawls* and *William L. Marbury* (with whom was *Jesse Slingluff* on the brief), for the appellants.

*Fleet W. Cox* and *Robert F. Leach,* Jr., for the appellees.

Burke, J., delivered the opinion of the Court.

This is the defendants' appeal from a judgment entered against them in the Baltimore City Court in a suit of the State to the use of the widow and children of Vincent Kabat, who was found dead in the waters of the Baltimore Harbor on the night of December 14th, 1909.

The defendants operate a manufacturing plant in the City of Baltimore in which were installed a number of boilers. The deceased was a fireman in charge of one of these boilers, and had been in the employ of the defendants in that capacity for about twenty-five years. Attached to the boiler in his charge on the night in question was an iron pipe which extended through the wall of the defendant's building. At

or near the point where this pipe emerged from the wall there was placed a stop-cock, or valve, which was designed and used to relieve at certain times the pressure of steam upon the boiler. This was done by opening the valve. From the point where the stop-cock was placed there was a short pipe running to the ground where it connected with another pipe which lead to the waters of the harbor, a distance variously estimated from three and a half to twelve feet.

There is evidence in the record tending to prove that the ground between the wall of the defendant's factory and the water was rough and uneven, and there being no light or guard rails along the harbor, the place at the time Kabat met his death was dangerous.

The declaration contained three counts in which the defendants were charged with three specific acts of negligence; first, in assigning the deceased "to work upon and about an engine and boiler, the exhaust pipes of which were run from the premises of the defendants over to and in the water of the harbor of Baltimore, about which said exhaust pipes there was no protection, guard or shield to prevent a person having occasion to be about the same from falling into said water"; second, that the deceased "was put to work upon and about an engine and boiler, the exhaust pipes of which were run from the premises of the defendants over to and in the water of the harbor of Baltimore, which exhaust pipes the defendants knew, or by the exercise of ordinary care on their part might have known to be dangerous, unsafe and unfit for use, because the same were defective and worn out and not capable of the uses to which they were put, and the cock at the end of said exhaust pipes was defective and known to the defendants to be defective, and of which dangerous and unsafe conditions the said Vincent Kabat was not advised, and could not have known by the exercise of ordinary care on his part," and third, in requiring him in the performance of his duty to

relieve the steam from the boiler through an exhaust pipe
which was "old, worn, in bad condition and defectively con-
structed and installed by unskillful and incompetent
employees, all of which were known to the defendant, but
of which Vincent Kabat was in ignorance."

The first count alleged that as the deceased attempted to
turn the stop cock so as to relieve the boiler and pipes from
the pressure of steam "and in the exercise of due and ordi-
nary care in so doing said pipe suddenly burst from an
explosion of steam accumulated in the same whereby the
said Vincent Kabat, husband and father as aforesaid, was
shocked and stunned and forced by said explosion into the
water of said harbor of Baltimore, whereby he was killed
or drowned."

The second count charged that "on or about the 14th day
of December, 1909, while the said Vincent Kabat was so
assigned to work upon and about said engine and boiler
and exhaust pipes without warning or notice to him, said
exhaust pipes burst and exploded from an explosion of
steam accumulated in the same, whereby the said Vincent
Kabat, husband and father as aforesaid, was shocked, stunned
and forced by said explosion into the water of said harbor
of Baltimore whereby he was killed or drowned."

In the third count it is alleged that by reason of its old,
worn and bad condition known to the defendants but un-
known to the deceased the pipe burst and exploded whereby
Kabat was shocked and stunned to such an extent as to
cause his death.

The issues to be tried were presented by the plea of not
guilty. At the conclusion of the testimony offered on both
sides the plaintiff submitted one prayer which was on the
measure of damages. This prayer was granted. The defend-
ants filed a special exception to this prayer upon the ground
that there was no evidence in the case that the death of
Vincent Kabat was due to any negligence on their part. This
exception was overruled by the Court. The Court granted

an instruction of its own by which the jury were told that
if they found from the evidence that the deceased was in a
position of safety at any time after the violent explosion or
escape of steam mentioned in the testimony, they should
find their verdict for the defendants.

The defendants submitted three prayers, the granting of
either one of which would have defeated a recovery by the
plaintiffs. These prayers were refused. The record pres-
ents but one bill of exception taken by the defendants to
the action of the Court upon the prayers and the special
exception filed thereto by the defendants.

The real question in the case relates to the propriety of
the rejection of the defendants' three prayers, each of which
asked the Court to withdraw the case from the jury. The
first prayer asserted that *under the pleadings* the equitable
plaintiffs' had offered no legally sufficient evidence to entitle
them to recover; the second asserted that the equitable plain-
tiffs had offered no legally sufficient evidence to show any
negligence on the part of the defendants in respect to any
duty owing by them to the deceased; and the third that by
the uncontradicted evidence the deceased by his own negli-
gence directly contributed to the happening of the accident
which caused his death.

The defendants were bound to use due and reasonable
diligence to provide the proper materials, appliances and
instrumentalities for doing the work assigned to the deceased.
Nor were they justified in knowingly or negligently expos-
ing him to any extraordinary or unreasonable peril in the
course of his employment, against which from the want of
knowledge or skill he could not, by the use of ordinary care
and prudence, under the circumstances, guard himself. Each
count of the declaration is framed upon these familiar prin-
ciples of law, and each, therefore, stated a good cause of
action.

It is equally well settled that to sustain the action it was
incumbent upon the equitable plaintiffs not only to offer

evidence legally sufficient to prove the negligence of the defendants under the rule stated; but they were bound to offer evidence legally sufficient to show that the negligence charged resulted in the death of Vincent Kabat.

Actionable negligence is an act, or omission of duty which is the proximate cause of an injury. No matter to what extent, or in what respect a party may be negligent such negligence does not constitute a cause of action, unless the negligence charged and the injuries sued for bear the relation of cause and effect. In legal contemplation, actionable negligence and injury are cause and effect. The effect of the defendants' first prayer, which referred to the pleadings, was to confine or limit the right of recovery to the issues made by the pleadings.

An examination of the evidence, in the light of these well-recognized principles, has led us to the conclusion that the equitable plaintiffs have wholly failed to establish their case, and that the defendants' first and second prayers should have been granted.

How this unfortunate man came to fall into the water is a matter of pure speculation or conjecture. Certainly, his death was not caused by the negligence charged in the declaration, although it is doubtless true that he would not have fallen in the water had not the explosion occurred; but the evidence is clear that that explosion did not cause his death, or precipitate him into the water as alleged in the declaration.

Dealing with the evidence according to its general import and effect, it is shown that Kabat in company with Thomas Stephansky went to the stop cock referred to and opened it for the purpose of relieving the pressure of steam on the boiler, and that the exhaust pipe burst or exploded. This was quite a violent explosion, causing the escape of a considerable quantity of water and steam from the broken pipe, and blowing a hole in the ground under or near the pipe. Kabat was not injured by this explosion, but he became

greatly excited thereby and ran into the building, where he
was in a place of entire safety. He got a torch from the
witness Olscwsky, and went on the outside of the building
towards the broken pipe. It was dark on the outside, and
the wind blew out the torch, and Olscwsky who was with
Kabat came inside of the building. Nothing more was seen
of Kabat until he was found dead in the waters of the
harbor. These facts were shown by the testimony adduced
on behalf of the plaintiffs. The witness Thomas Stephansky
in the early part of his examination in chief was asked
how Kabat met his death, and he replied: "Well, he fell
into the water when the pipe blew out." It was upon this
statement that the plaintiffs relied to take the case to the
jury; but it is perfectly obvious that the witness did not
mean that Kabat was injured by the explosion or that he
fell into the water at the instant it occurred, because he
proceeded to give an account of what occurred after the
explosion in which the facts as to Kabat's return to the
building, his procuring the torch, and going on the outside
towards the pipe are fully shown. In this he is corroborated
by the witness Olscwsky. It is evident that the statement
by Stephansky was merely a general description of the
occurrence which he subsequently fully explained in his testi-
mony.

It is apparent from the facts stated that the equitable
plaintiffs on the evidence introduced in their own behalf
failed to establish, or to offer any evidence tending to estab-
lish the issues made by the pleadings.

The evidence shows that the body of the deceased when
taken from the water was badly scalded; but when or how
he received these injuries is not shown. It is, however,
clearly shown that he was not so injured at the instant the
pipe exploded as alleged in the declaration. It is probable
that after the torch was extinguished he approached the
pipe and came in contact with the escaping steam, and in

his excitement stumbled or fell into the water.    But this is a mere inference.

> *Judgment reversed without a new trial, with costs to the appellants.*