# HARRY W. ROSENTHAL

## *vs.*

# JOHN DURKIN.

*Contributory Negligence—Motor Vehicle—Excessive Speed.*

The case should not be withdrawn from the jury on the ground of plaintiff's contributory negligence, unless such negligence is established by clear and uncontradicted evidence. p. 21

To justify a court in saying that certain conduct is *per se* contributory negligence, the case must present some such feature of recklessness as would leave no opportunity for difference of opinion in the minds of ordinarily prudent men. p. 25

In an action for personal injuries to a motorcycle policeman, by reason of a collision with defendant's automobile, *held* that the question of whether plaintiff, running his motorcycle at a speed of forty miles an hour in the endeavor to cut off a car which was speeding, was guilty of contributory negligence, was for the jury. p. 25

*Decided November 23rd, 1922.*

Appeal from the Superior Court of Baltimore City (DOBLER, J.).

Action by John Durkin against Harry W. Rosenthal. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*William D. Macmillan,* with whom was *Harold Tschudi* on the brief, for the appellant.

*Lewis W. Lake,* with whom was *J. Cookman Boyd* on the brief, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is an appeal from a judgment in favor of the plaintiff against the defendant, in the Superior Court of Baltimore City, for the sum of $2,000.

The record contains one bill of exception, and that is to the rulings of the court on the prayers.

It is agreed between the counsel of record, and stated in their briefs, that the only question involved on the appeal is, whether or not the plaintiff was guilty of contributory negligence, and this question is presented by the ruling of the court, in refusing to grant the defendant's second prayer upon the alleged contributory negligence of the plaintiff at the time of the accident.

This prayer is in the usual form and is as follows: The defendant prays the court to instruct the jury that from the uncontradicted evidence in this case the plaintiff was guilty of negligence directly contributing to the act complained of, and their verdict must, therefore, be for the defendant.

The declaration, in substance, avers, that the plaintiff was a member of the police force, operating in Baltimore City, and was attached to one of the motorcycle divisions of the city, and in the discharge of his duties, on the 3rd of November, 1920, was operating his motorcycle, driving in a southerly direction on Mt. Royal Avenue, near the intersection of Newington Avenue, Baltimore City, and that, as he approached the intersection of Newington Avenue, an automobile, driven by the defendant, Harry W. Rosenthal, in a northerly direction, was turned sharply to the left into Newington Avenue, causing the plaintiff and his motorcycle to collide with the automobile owned and operated by the defendant, and that the accident was caused solely by the carelessness and negligence of the defendant, and through no fault or cause on the part of the plaintiff contributing thereto.

The rule of law controlling, in negligence cases, where questions of contributory negligence, as in this case, are involved, is clearly settled and determined by numerous cases in this Court.

In *Waltring* v. *James,* 136 Md. 413, it is said that "unless the act and conduct of the plaintiff relied on as amounting in law to contributory negligence is established by clear and uncontradicted evidence, the case should not be withdrawn from the jury, and that when the nature of the act relied on to show contributory negligence can only be determined by all the circumstances attending the transaction it is within the province of the jury to characterize it."

In *Winkelmann & Brown Co.* v. *Colladay,* 88 Md. 78, this Court said: "It is well settled that unless there is some prominent and decisive act, in regard to the effect and character of which no room is left for ordinary minds to differ, courts will not withdraw cases of this character from the consideration of the jury. *Central Ry. Co.* v. *Coleman,* 80 Md. 337." See *Consolidated Ry. Co.* v. *Rifcowitz,* 89 Md. 340; *Baltimore* v. *Mattern,* 133 Md. 16.

In the recent case of *Hyde* v. *Blumenthal,* 136 Md. 451, it is said that "to justify a court in saying that certain conduct is *per se* contributory negligence, the case must present some such feature of recklessness as would leave no opportunity for difference of opinion as to its imprudence in the minds of ordinarily prudent men."

The accident in question occurred on the 3rd of November, 1920, at the intersection of Mount Royal Terrace and Newington Avenue, Baltimore City.

The plaintiff was a motorcycle policeman, and was employed at the time, for the purpose of enforcing the traffic laws of Maryland, in the public parks of Baltimore City, and was, on the date of the accident, in the discharge of his duties, operating a motorcycle, driving in a southerly direction, on Mr. Royal Avenue, near the intersection of Newington Avenue.

The first count of the declaration, which sets out the cause of action, avers that on or about the 3rd day of November, 1920, at about 5.15 P. M., in the dispatch of his duties as a member of the police force, plaintiff was operating a motor-

cycle, consigned to him for his services, in a southerly direction along Mt. Royal Avenue, in a careful, skillful and prudent manner, and that, as he approached the intersection of Newington Avenue, an automobile driven by Harry W. Rosenthal in a northerly direction was turned sharply to the left into Newington Avenue, which automobile was being driven in a reckless, careless and negligent manner, that no warning was given to the plaintiff by the said defendant that he intended to make said turn, so as to give the plaintiff an opportunity to slow up or stop, but that the said automobile cut directly across the right of way which the plaintiff was following, thereby causing the plaintiff and his motorcycle to collide with the said automobile owned and operated by the said Harry W. Rosenthal. In consequence whereof the plaintiff was seriously injured and damaged, although the said accident was caused solely by the carelessness and negligence of the defendant and through no fault or cause on the part of the plaintiff contributing thereto.

By the second count it is alleged, in addition to the facts stated in the first count, that, at the intersection of Newington Avenue, the defendant, without notice or warning to the said plaintiff, turned out of the line of traffic, directly in front of said plaintiff, thereby causing said machine of the plaintiff to collide with the automobile being driven by the said defendant, causing the plaintiff to be greatly injured and damaged; that, at the time of the accident complained of, the defendant could have seen the plaintiff approaching had he used ordinary care, but the said defendant, without warning or notice to the plaintiff, cut his automobile directly across and in front of the plaintiff, thereby causing the plaintiff to collide with and run into the machine of the defendant, that the plaintiff had no reason to believe that the defendant intended to cut across the way he was travelling by turning into Newington Avenue, and therefore was unable to stop his motorcycle or avoid the collision, wherefore and because whereof the plaintiff sustained serious bodily harm, his arms, legs and

body being severely cut, bruised and otherwise injured, that he has sustained nervous shock, and suffered severe pain and physical disability, mental anxiety and distress, which injuries in their nature are permanent, that it is and has been necessary for the plaintiff to have medical and surgical treatment and attention, because of the injuries above set out and complained of, that the plaintiff has been and still is physically and mentally unable to attend to his duties as heretofore, and will not be for a long period of time, all of which was caused solely by the negligence and carelessness of the defendant and through no fault of the plaintiff or negligence or want of care contributing thereto by him.

The plaintiff testified in part that, on November 3rd, 1920, he was employed by the Board of Park Commissioners as a "park officer, motorcycle officer," and that his post was from 29th and Charles Street to University Parkway, "and from the old city line, which is before you reach Roland Avenue, through Wyman's Park, into the lower part of Druid Hill Park, around the bottom of the big lake and down Mt. Royal Drive to North Avenue." That he had been a motorcycle policeman about twelve years or more, and that he was 'perfectly familiar with the manipulation and operation of a motorcycle," and "experienced in that respect." That the races were being held at that time at Pimlico, and his orders from the sergeant were to work the Mt. Royal post from North Avenue to the Soldiers and Sailors Monument from 12.30 P. M. to 2.50 P. M., and from "4.30 P. M. until the traffic is all in from the races at night, so as to keep the machines from causing any accidents, to keep them in line down Mt. Royal Drive, the driveway—the drive is full when they are coming from the races, and we allow them to keep moving at a good rate of speed between twenty and twenty-five miles an hour as long as they will continue in line, that keeps the traffic moving all the time, and we get rid of this surplus traffic so as to allow for the regular traffic that uses that drive. It is a heavy drive, and it is of course worse when they return

from the races.  I generally station myself, I make a trip once in a while, but I was generally at the Soldiers and Sailors, so that I could see the traffic as it come down the south approach from the Lake Drive down Mt. Royal.  I was sitting on my machine, and my engine running, and to get going, simply all I had to do was to pull my clutch in and I was gone.  These machines—heavy traffic going down—I saw this machine at the bottom of the high service reservoir, and at the Lake Drive there shot out of line, one of those big hacking cars, loaded with passengers, shot out of this line, on down Mount Royal Avenue, and me right straight behind it. I followed him down the drive, laying with my machine about, just so that I could keep everything clear ahead of me and see everything clear on the drive, with him, and I suppose about fifty feet behind him, so in case of a sudden stoppage of him or anything, I could pass him."

It is stated in the appellee's brief that the plaintiff, realizing the great danger to traffic that was likely to happen as the result of the speed of this car, started after it and himself ran at the rate of forty miles per hour.  According to the testimony, it would have been highly dangerous to have stopped the hacking car in the midst of the traffic prior to reaching about Reservoir Street, but be that as it may, up until the time of the accident in this case, he had not caught up to this speeding hack.  The testimony shows that the officer was on Mount Royal Avenue outside of the line of the south bound traffic but yet about three feet to the west of the center of the road and that he had a clear view down the Mount Royal Drive.  Durkin, while riding down to the Mount Royal Drive, was himself in clear view of the north bound traffic, which would be to the east of the center of the road.  He was probably fifty feet behind the speeding hacker as he approached Newington Avenue, which cuts into the Mount Royal Drive, when suddenly, without warning or notice, the car of the appellant, Dr. Rosenthal, driven by the appellant, in clear violation of the traffic laws, shot out from

the line of north bound traffic before he had reached the south side of Newington Avenue, to cross the road to his left headed in the general direction of the northwest corner of Mount Royal Drive and Newington Avenue.   Before Rosenthal's machine had gotten a distance of practically nine feet from the west of the center of Mount Royal Driveway, and without the slightest chance of Officer Durkin stopping his motorcycle, Durkin crashed into the right wheel and fender of the appellant's car.

The defendant testified in part as follows: "Knowing that the races were held on that day and being well familiar with the park, as I pass there about fifteen or twenty times a day, I was very cautious in the way I traveled.   And when I approached the opening of Mount Royal Terrace at North Avenue I was going at the average rate of speed.   I proceeded in that speed until I reached about the corner of Reservoir and Mount Royal Terrace, where I saw Officer Kerl standing, and I waved my hand to him and proceeded.   At that time a number of automobiles were coming north, some automobiles must have been—a number of automobiles pass coming south, and some automobiles must have been following in back of me north as well, and knowing the traffic, as I said, I was slackening down, because I knew that about a block away from me I would make a turn into Newington Avenue.   I travelled that way for about half a block, and as I did that I looked ahead of me to see what traffic was approaching me.   Reaching out a little further at a very slow rate of speed, I beheld a jam of cars coming down, and thereupon a taxi or a big car, running at a break-neck speed and another motorcycle running in back of it.   Seeing this, and knowing that my car was going at a very slow rate of speed, keeping to the right of the center line, as I should, I pulled out of the center—of the traffic line, and by reaching about the center point of the intersection of Mount Royal Terrace and Newington Avenue I stopped, meaning that I put on my emergency brake, because I saw that something was going to happen.   I saw that

the jam of the cars were innumerable, big, and that the taxi was rushing at that speed and the motorcycle in back of it, I knew that something unless I stopped was bound to happen, either we would get killed or somebody else would get killed. When I stopped the taxi passed me thereafter. The motorcycle man as I saw him coming from afar perceived the danger that he was in and he started to swerve his motorcycle, trying to get to the right hand of me. But thereupon seeing that the motorcycle was coming at such a break-neck speed and not be able to swerve from the straight line, his front wheel jammed right into the front of my radiator, the rear wheel of his motorcycle striking the wheel and breaking the axle at the point of the junction with the wheel.

There was other evidence introduced on the part of both the plaintiff and defendant, reflecting upon the questions in the case but as we are of opinion, upon the whole evidence disclosed by the record, that the question of contributory negligence on the part of the plaintiff, under the facts of the case, was one for the determination of the jury, and not a question to be decided by the court, as a matter of law, we do not deem it necessary to review or discuss it further in this opinion.

The theory of the defendant's case, that the plaintiff was guilty of contributory negligence *per se* because, while in the performance of his duty, he was running at a rate of speed of forty miles per hour, cannot avail the defendant under the special facts of this case, but it was a question for the jury under proper instructions from the court. Act of 1920, section 49, chapter 506.

In the case of *Hempel* v. *Hall*, 136 Md. 174, the Court said, "In order that the Court may say, as a matter of law, that the plaintiff was guilty of contributory negligence, it must be satisfied that the case presents some such feature of recklessness as could leave no opportunity for difference of opinion as to its imprudence, in the minds of ordinary prudent men." *Hines* v. *Watkins,* 137 Md. 211.

In *A. & E. Ency. of Law,* vol. 7, 396, it is said: "A person who goes into a place of danger in the discharge of a public or official duty which rendered such exposure to duty necessary, and is thereby injured by the negligence of another, is not guilty of contributory negligence in incurring the danger, if he used due care under the circumstances to avoid injury therefrom."

Finding no reversible error in the rulings of the court, the judgment must be affirmed.

*Judgment affirmed, with costs.*