JOSEPH SUDBROOK *v.* STATE, Use of State
Accident Fund, et al.

*Collision at Highway Intersection—Contributory Negligence—
Of Motorcycle Policeman.*

A police officer on a motorcycle, killed in a collision with a
truck which was making a left turn from another road into
that on which the officer was traveling, *held* guilty of contribu-
tory negligence in driving at an excessive speed, which was the
proximate cause of the accident, even conceding that the truck
driver was negligent in not passing to the right of the center
of the intersection of the two roads in making the turn.

pp. 195-202

That the officer was in pursuit of an automobile which was
exceeding the speed limit did not relieve him of the legal duty
to observe due care for the protection of those whom he knew,
or by the exercise of reasonable judgment should have expected,
to be using the highways at the place of the accident.        p. 200

The testimony of a truck driver that he did not hear any
horn from an approaching motorcycle was some negative evi-
dence that a horn was not blown.                              p. 200

A police officer acting under statutory authority must use
reasonable care in performing his duties, and cannot recover
for injuries by reason of a lack of such care, constituting con-
tributory negligence.                                        p. 203

*Decided June 8th, 1927.*

Appeal from the Baltimore City Court (Dawkins, J.).

Action by the State of Maryland for the use of the State
Accident Fund and Louisa R. Cramblitt against Joseph
Sudbrook. From a judgment for plaintiff, defendant ap-
peals. Reversed.

The cause was argued before Bond, C. J., Pattison,
Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Walter V. Harrison,* with whom were *Charles Trageser* and *Foster H. Fanseen* on the brief, for the appellant.

*Willis R. Jones* and *Herbert Levy,* for the appellee.

PARKE, J., delivered the opinion of the Court.

The suit in this case was brought by the State of Maryland, for the use of the State Accident Fund and Louisa R. Cramblitt, against Joseph Sudbrook, the appellant, to recover the damages suffered by Louisa R. Cramblitt in the death of her son, Arthur E. Cramblitt, who was killed by the collision of his motorcycle with the motor truck of the appellant. At the time of his death the son was in the performance of his duty as a member of the State Police Force, and his mother was partly dependent upon him, and so was allowed compensation by the State Industrial Accident Commission. The State Accident Fund was the insurer of the Commissioner of Motor Vehicles against liability under the Workmen's Compensation Act, and the suit was brought upon the theory that the death of the police officer was caused under circumstances creating a legal liability in the appellant to pay damages, which could be recovered by the insurance carrier for its benefit to the extent of the compensation paid or awarded, and of any payments made for medical or surgical expenses or for any other purposes enumerated in section 37 of the article, and the residue, after the deduction of these amounts and the expenses and costs of action incurred by the State Accident Fund, for the benefit of the dead officer's partly dependent mother. Code, art. 101, sec. 58. A judgment was obtained against appellant for five thousand dollars, which was largely in excess of the payments for which the State Accident Fund was responsible.

The accident occurred in the early afternoon of October 1st, 1925, and the officer died on the same day without regaining consciousness. The scene of the accident was on the Washington Boulevard, where it is entered by Railroad Avenue. Washington Boulevard runs about north and south, and is twenty feet in width, with a macadam surface sixteen

feet wide and rock shoulders projecting two feet on either side of the edge of the roadway. Railroad Avenue extends at right angles from Washington Boulevard eastward one block to Elk Ridge and is twenty-one or twenty-two feet in width, with a macadam roadbed of twelve or thirteen feet wide between four and one-half feet of traveled hard dirt roadway. The appellant's motor truck, with a capacity of five tons, was loaded with sand and gravel and was being driven westwardly along Railroad Avenue for the purpose of turning to the left at the end of the avenue at Washington Boulevard and then traveling south along the boulevard. The motor truck was in charge of an experienced driver and was moving at not more than four or five miles an hour at the time of the collision. The only negligence with which the driver could be charged was that, in making the left turn to go south upon the boulevard from Railroad Avenue at the intersection of the two public highways, he did not pass to the right of the center of such intersection as required by the statutory rules of the road. Code, art. 56, sec. 209; *Buckey v. White,* 137 Md. 124, 129; *Brown v. Patterson,* 141 Md. 298, 299. While the evidence on this point is conflicting, and the appellee produced no eye witness to the accident, but relied upon the course of the truck being established by its wheel tracks on the surface of the roadway, yet this testimony, if believed, tended to show a violation of the statute regulating the operation of motor vehicles, and would be evidence of some negligence on the part of the driver of the truck sufficient to carry the case to the jury, if it were the proximate cause of an injury, to which the motorcyclist did not contribute by his own negligence.

There is a barn on the south side of Railroad Avenue about seventy-five feet from the eastern side of Washington Boulevard, and, in the right angle formed by the intersection of the eastern margin of Washington Boulevard with the southern line of Railroad Avenue, there is a vacant field, so that, from a point seventy-five or seventy-eight feet from the

eastern edge of the boulevard, there is an unobstructed view to the south of the boulevard to an overhead railroad bridge, which crosses the boulevard one hundred and fifty feet from the intersection of the center lines of Railroad Avenue and of the boulevard. The bridge and its approaches shut out any greater view until a point twelve or thirteen feet from the boulevard is reached, where, by looking through the opening under the bridge, the boulevard is visible for three hundred and seventy-five feet from the intersection mentioned. The driver of the loaded motor truck was moving at the rate of four or five miles an hour, and he looked in both directions when he got to the corner, and did not see anything approaching on his left, but he did not continue to look to the left, but looked to his right, as was his duty under the law of the road, when, suddenly, he heard the noise of the motor and immediately the crash of the impact. The motorcycle hit the motor truck on the left side at the cab, which was four feet from the front of the truck, and so great was the force of the collision that the driver of the truck was struck by either the rider or the motorcycle, and knocked from the steering wheel to the other side of the seat, so stunned that he lost recollection of what immediately happened. The truck, without guidance, drifted across the road and crashed into a fence, where it stopped. The motorcyclist was killed and he and his motorcycle, still running, were found lying on the right side of the boulevard.

There is some evidence that the cause of the great speed at which the officer was traveling at the time of the accident was attributable to an effort to overtake and arrest the driver of a speeding automobile. There is no question that he was running at a great speed. Two eye-witnesses of the fatality, whose attention to the officer was attracted by what they described as his terrific speed, passed him in their automobile about at the overhead railway bridge and, in the expectation that he would crash into some traveler on the highway, made a comment on his recklessness, looked back, and the accident happened. Almost in the length of two short sen-

tences and the turn of their heads, the motorcycle had covered over one hundred and fifty feet. This great speed is graphically portrayed by the marks made by the motorcycle on the macadam road. The motorcycle was running on the right of the highway about eight inches from the eastern edge of the metaled way at the time the officer first applied his brakes. The length of the mark thus made on the roadbed was one hundred and ten feet. At first it was broken by gaps of about three feet, but, twenty feet from the point of the accident, it became a continuous line until the front of the motorcycle hit the truck. The crash of the collision was heard by one of appellee's witnesses about two blocks away and by another one hundred yards. The smashed motorcycle was thrown on the road, still running, with the rim of its front wheel driven in at an acute angle, the wheel and tire twisted, the forks and handlebars considerably bent, and the equipment carried on the front mashed and broken. The only estimate given of the speed at which the motorcycle was moving was by the driver of the automobile, who passed the officer about one hundred and fifty feet from the point of the accident, and she testified: "I could not tell that the man on the motorcycle was an officer, he had his head down, and had goggles on. I was going between twenty and twenty-five miles an hour, and he was going twice or three times as fast as I was."

The physical results illustrate the violence of the impact, and, with the evidence of the only witness who saw the accident, established the great speed of the motorcycle, and make entirely credible the statement of the driver of the truck that when he looked towards the left he did not see the approaching motorcycle because it had not then come within the range of his vision. Even if he had seen the officer in the distance on his motorcycle, he would have been justified in assuming that it was unnecessary again to look to his left, upon the presumption that the motorcycle was being driven under control, and that, in obedience to the rules of the road, it would yield the right of way to vehicles approaching on the officer's

right, and that, although his truck was on the wrong side of the center of Railroad Avenue, the lighter and more mobile vehicle would not be driven into his plainly visible, heavy, and slow moving truck. See Code, art. 56, sec. 209.

In answer to this, the argument is made that if the driver of the truck had kept to the right of the center line of Railroad Avenue, the officer would have had one-half the width of the avenue into which to turn to avert the collision. This argument ignores the excessive speed at which the motorcycle was moving, and rests upon the unjustifiable assumption that a motorcycle, whose speed was so great it was beyond the control of its operator, could safely have made, at the right angle formed by the two highways, an abrupt and sharp turn into Railroad Avenue south of its center line. The difficulty of making so arbitrary a conjecture is increased by the fact that the officer did not have sufficient presence of mind to avail himself of at least ten feet of roadway in which he could have swerved safely in his course on the boulevard and passed in front of the slowly moving motor truck.

The argument is, also, fallacious in treating the evidence that the servant of the appellant had not kept to the right of the center of the highway as such negligence as would of itself justify a recovery. This position disregards the fact that the plaintiff must show affirmatively not only that the defendant was negligent, but also, assuming there was such negligence, that such negligence caused the accident, or whether in this particular case there was not such clear want of ordinary care to avoid the accident on the part of the officer as would make it irrational for a reasonable person to believe the accident would have happened except for this failure of ordinary care in the officer himself. *Anne Arundel County v. Collison,* 122 Md. 91, 95; *Hagerstown v. Foltz,* 133 Md. 52, 56; *Hopper, McGaw & Co., v. Kelly,* 145 Md. 161, 168; *Young Co. v. State, use of Kabat,* 117 Md. 247, 252; *Hyde v. Blumenthal,* 136 Md. 445, 451.

On the uncontradicted evidence, and the indisputable inferences to be drawn therefrom, it does not seem possible for two views to be entertained of the conduct of the motorcyclist.

The officer's service compelled him to know the rules of the road, and he was patrolling the highway for the purpose of enforcing these rules when he met his death. For the safety of himself and all using vehicles upon the highway, it was his imperative duty to avoid danger by the observance of these rules. The fact he was an officer in pursuit of a driver of an automobile, who was exceeding the speed limit, made his swift pace none the less dangerous, nor did it relieve him of the legal duty to observe due care for the protection of those whom he knew, or by the exercise of reasonable judgment should have expected, to be using the highways at the place of the accident. 22 *R. C. L., "Public Officers,"* sec. 162, pp. 484, 485; 1 *Beven on Negligence* (3rd Ed.), 220; *Mainwaring v. Geisler,* 191 Ky. 532, 18 L. R. A. 192, and notes; *Florio v. Jersey City,* 101 N. J. L. 535, 40 A. L. R. 1353 and notes; *Downs v. Swann,* 111 Md. 53, 64; *Morse v. Sweenie,* 15 Ill. App. 486. From the time he passed under the railway bridge, and for one hundred and fifty feet, the truck approaching the intersection of the highways was in clear and full view. He saw the truck at least one hundred and ten feet away, because at this distance the marks made when he first applied the brake begin. And seeing the truck, he knew its position and rate of progress on the highway, and that it could only turn north or south and that, whether it went north or south, it would obstruct his passage either by getting athwart his course or by preceding him northward on the right half of the boulevard. Under such circumstances, the officer should have warned the driver of the motor truck of his approach by blowing his horn. There is no testimony that the horn was blown, and the testimony of the truck driver that he heard nothing except the noise of the motorcycle immediately before the collision is some negative evidence that it was not blown. Code, art. 56, sec. 193 (2). In his situation the officer knew his motorcycle should be under control. Code, art. 56, sec. 195. And he was advised by the then rule of the road that the truck had the right of way over all vehicles approaching from the left, and that it was his correlative duty to give the right of way to the truck.

Code, art. 56, sec. 209; *Buckey v. White,* 137 Md. 124, 129; *Chiswell v. Nichols,* 137 Md. 291, 306; *Kelly v. Huber Baking Co.,* 145 Md. 335, 336. Furthermore, his familiarity with the movement of highway traffic had informed him that a large, heavy, and unwieldy motor truck is not so easily guided and managed as the less rigid automobile, and probably would not be driven from a roadway of not over twenty-two feet in width into a twenty foot roadway, at right angles, without riding to the left of the intersecting center lines of these highways. His speed and the likelihood of sudden and exigent peril both to himself and those traveling the thoroughfares made it his duty to be alert, to anticipate and carefully to avoid danger. He applied his brake certainly one hundred and ten feet away from the truck, but failed to stop in time simply because of the momentum acquired by the rash velocity at which he had been driving the motorcycle as he neared the intersection. For this imprudent speed, for the failure to sound his horn, and for any miscalculation as to time and distance in the use and effectiveness of the brake, the officer was alone responsible. If the truck driver had been on the right of the center line of the intersecting highway, all that can be said with certainty is that the driver would have been without fault, but, assuming that his violation of the rule of the road by being to the left of the intersecting center line did put the motorcyclist in danger contributing to his death, yet had the motorcyclist, being so imperiled, used reasonable care for his own safety in the operation of the motorcycle, the accident would still not have happened. The driver of the truck being in fault did not dispense with the officer's using ordinary care under the circumstances for his own protection. So, although the original and concurrent negligence of the truck driver were a cause of the motorcyclist's injury, it was a comparatively remote cause and, in the chain of circumstances, the proximate cause was the fault of the motorcyclist, since his own negligence was the immediate, closing, and efficient act when and as he received the injury of which he died. The material facts of this case are not only clear and uncontroverted, but are also

distinct, prominent, and decisive, and from them the only conclusion to be drawn by all reasonable men is that the motorcyclist's own negligence, although concurrent with that of the driver of the truck, was the proximate cause of the injury of which he died, and, therefore, the question was for the court and not for the jury.

The appellee relied upon the case of *Rosenthal v. Durkin,* 142 Md. 18, as authority for the contention that the question of contributory negligence in the present case was properly submitted to the jury. While no reference is made in the opinion to the circumstance, it is an interesting fact that in the next succeeding reported case of *State v. Brown,* 142 Md. 27, a local ordinance of Baltimore City granting the absolute right of way on the streets to fire apparatus, ambulances, and public vehicles, was held not to be invalid on the ground of repugnancy to the general law to the contrary, as found in section 163 of chapter 506 of the Acts of 1920 (Code, art. 56, sec. 209). Compare *Kidd v. Chissell,* 146 Md. 169. However, in *Rosenthal v. Durkin, supra,* the plaintiff's evidence tended to show that he was a motorcycle officer of Baltimore City in pursuit of a speeding automobile, which was but fifty feet ahead of him, and moving southward along a Baltimore City street, when the defendant, with both the pursuer and the pursued in full view, and before the defendant reached the south side of an intersecting street, suddenly, without warning or notice, in clear violation of the traffic laws, shot out to his left from the line of the north bound traffic in an attempt to cross the street in the general direction of the northwest corner of the intersection of the streets, and drove his automobile between the speeding car and the pursuing officer, without the slightest chance of the latter stopping his motorcycle in time to avoid the collision. While the defendant admitted seeing the flight of the automobile and the close and rapid pursuit of the officer, his defense was a denial of the evidence of his negligence that was offered by the plaintiff. Under such circumstances this Court held that the simple fact that the plaintiff, while in the performance of an official duty, was running his motorcycle at a rate

of speed of forty miles an hour did not, under the special facts of that case, constitute contributory negligence *per se,* but was, along with other testimony bearing on the issue of contributory negligence, something to be considered by the jury under proper instructions from the court. Pages 23, 24; *Kelly v. Huber Baking Co.,* 145 Md. 321, 335, 336. Thus the facts on the record in *Rosenthal v. Durkin, supra,* were not only disputed, which alone required their submission to the finding of a jury, but they were also not analogous to those of the case at bar; and so the decision is not applicable to the instant case, where the evidence of the negligence of the officer's conduct is undisputed and so conclusive that no other inference can be drawn by a reasonable man than that the dead officer did not use due care, under the circumstances, to avert the collision. *Supra,* at pages 25, 26. In every case, the officer acting under statutory authority must use reasonable care in performing his official duties, and when their discharge may or may not result in an injury to himself or a third party, accordingly as he may or may not use due care under the circumstances in the execution of his official work, and so an injury happens to himself through his failure to use such care, he may not recover for the injury, if such failure to use due care mounts to contributory negligence in law. *Supra,* and *Texas Co. v. Wash., B. & A. Elec. R. Co.,* 147 Md. 167, 175.

In view of our conclusion that the trial court should have granted appellant's B prayer, withdrawing the case from the jury on the ground of the contributory negligence of the dead officer, it will be unnecessary to discuss the other exceptions and prayers.

*Judgment reversed, with costs, without a new trial.*