UNITED STATES FIDELITY & GUARANTY COMPANY *v.* CONTINENTAL BAKING COMPANY

[No. 5, January Term, 1937.]

*Decided March 17th, 1937.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Robert D. Bartlett,* with whom were *Bartlett, Poe & Claggett* on the brief, for the appellant.

*Rignal W. Baldwin, Jr.,* and *Douglas N. Sharretts,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

On March 4th, 1933, Ellsworth D. Dryden, a sergeant of the State Police, was in charge of the escort to Gov. Albert C. Ritchie to and from the Presidential Inauguration held that day in the City of Washington. On the return from Washington to Annapolis, Sergeant Dryden collided with a bakery truck of the defendant, the Continental Baking Company, appellee, at the intersection of Rhode Island Avenue with Thirty-fourth and Perry Streets at Mt. Rainier, located north of and adjacent to the District of Columbia in Maryland. Sergeant Dryden was riding a motorcycle, and as a result of the crash was seriously injured. He and Corporal Flakenstine headed the procession, then Gov. Ritchie in a closed car, followed by an open car, which had been used by the Governor in the inaugural parade, occupied by Melvin V. Shanley, Charles N. Brill, Irvin H. Sentz, and Clarence A. Thornberg, with Officer H. G. Schultheis on a motorcycle in the rear. Rhode Island Avenue runs northeast from Washington toward Baltimore, and, at the place of the accident, is intersected by Thirty-fourth Street, running north and south, and Perry Street, running east and west, and intersecting each other at Rhode Island Avenue, which at this point is 86½ feet from curb to curb, with two street car tracks almost in the center of the street. The avenue is paved its entire width. There are eight traffic lights and four traffic signals or signs in the intersection, so that every driver has ample notice of the character of the intersection. The place is densely populated.

There was a safety zone painted white, with buttons about three inches high at the near end, about seventy feet from the intersection with Thirty-fourth Street, with the front or vertical line of the safety zone forty feet from that intersection. The safety zone is useful only in locat-

ing the witnesses and their evidence, and otherwise has nothing to do with the case.

At the conclusion of the plaintiff's case, the trial court granted the defendant's prayer for an instructed verdict for want of legally sufficient evidence of primary negligence, and from the judgment thereon the plaintiff appeals.

This suit is brought by the United States Fidelity & Guaranty Company of Baltimore, insurer of the Commissioner of Motor Vehicles of Maryland, whose officer or employee, Ellsworth D. Dryden, was injured, as stated, in the course of his employment, the declaration charges, as a result of the defendant's negligence, and the insurer sues to reimburse itself for the costs and expenses incurred as such insurer under the provisions of article 101, section 58, of the Code.

The police and two cars, after they left the district line, were going at the rate of from twenty-six to thirty miles an hour, which was several miles per hour in excess of the legal rate of speed permitted in crowded districts (twenty miles an hour, Code [Supp. 1935] art. 56, sec. 194 (3), and the appellee argues that this is evidence of contributory negligence of Sergeant Dryden. It has been held in this court that the mere violation of a statute or rule of the road is not evidence of negligence unless such violation is the proximate cause of the injuries sued for (Kelly v. Huber Baking Co., 145 Md. 321, 334, 125 A. 782; Greer Transportation Co. v. Knight, 157 Md. 528, 537, 146 A. 851; Oberfeld v. Eilers, 171 Md. 332, 189 A. 203), but in this case we do not see where the speed of the sergeant's car had anything to do with the negligence charged on either side, proximate or contributory.

The appellant also argues that, because the motor vehicle officers were escorting the Governor of Maryland on an official expedition, their right was superior to that of the other users of the road, and the appellee's answer is that the officers were then merely employees of the department of motor vehicles, whose only duty was to patrol the roads of the state and to enforce the traffic laws as

they then existed (Act of 1918, ch. 85, sec. 136, and section 137, as amended by Acts 1920, ch. 506, sec. 137, Code of 1924, art. 56, secs. 175, 176), and that they did not become police officers of the State until the establishment of the department of Maryland State Police by the Act of 1935, ch. 303 (Code, [Supp. 1935] art. 88B), and that even then they had no such privileges as would entitle them to override or suspend the traffic laws of the state. So far as we are here concerned with the duties of the state police as traffic officers, there is no difference between their former and present status, and it still is as defined in *Sudbrook v. State*, 153 Md. 194, 138 A. 12, and in *Rosenthal v. Durkin*, 142 Md. 18, 119 A. 685, and it is not necessary to the decision of this case to discuss the question of any superiority over other users of the road on this occasion, because of the official character of the work to which they had been assigned by their superior officials. They were doing road patrol work at the time and were officially engaged, even if they were not pursuing violators of the traffic or other laws. No such emergency, however, is shown as to justify any action on the part of the officers in disregard of the precautions taken to promote the safety of the traveling public, or to protect the Governor of the State.

The collision in this case, resulting in injury to Sergeant Dryden, occurred about thirty feet from the intersection of Thirty-fourth and Perry Streets with the southeasterly side of Rhode Island Avenue, and six or seven feet from the southeasternmost rail of the car tracks, the bakery truck coming to rest, after the accident, between the tracks. The only evidence in the record is that of the plaintiff and its witnesses, and it is conflicting, much of it throwing little light on the true situation, although they were all mixed up in the accident. These accidents generally occur so quickly that the recollection of what happens, even to the participants, is not always accurate, and the evidence often unreliable.

The rule with respect to road intersections, where the traffic is directed by signal lights or semaphores, as stated

in *Blashfield's Cyclopedia of Automobile Law* (1926 to 1931 Supp.) p. 482, sec. 15d, is: "An automobile which enters a street intersection in which a police semaphore system of lights has been installed with the green or crossing light facing him, is entitled to continue until it clears the intersection, whether the green changes to amber and the amber to red or stop sign before he completes the crossing or otherwise. Traffic awaiting the green or crossing signal on intersecting streets must first ascertain whether the intersection is clear before starting to cross." See *Harrison v. Loyocano,* 12 La. App. 228, 125 So. 140. "The superior right of way at street intersections, controlled by traffic officers or signals, belongs to that vehicle, trolley car or pedestrian whose course is favored by the traffic officer or signal, subject to the rights of those already in the intersection." *Galliano v. East Penn Elec. Co.,* 303 Pa. 498, 154 A. 805, 807.

The evidence is that the green and red lights each remained on for fifteen seconds, with an intervening amber light for five seconds, and the only inference we draw from the evidence is that it was in those five seconds that everything happened. On the right side, the direction Sergeant Dryden was going, the side from which the bakery truck entered, the break in the Rhode Island Avenue sidewalk, made by the entry of Thirty-fourth and Perry Streets, was about eighty-five feet. When the collision took place, the officer had gone half this distance, or about one second from the intersection, two seconds from the safety zone. In the car track, at the safety zone, a roadster had been stalled or was in trouble, and Corporal Falkenstine dodged around the left of it, when Dryden for an instant glanced toward Falkenstine, then looked ahead and saw the bakery truck, his first sight of it, out in Rhode Island Avenue in the path of his motorcycle, and too near to avoid the collision. He did not know where it came from. Falkenstine said, as he was passing to the left of the stalled roadster," he observed the white truck coming to his right and just as he passed the front end of the truck he heard the crash."

Dryden testified "that half way between Thirty-third and Thirty-fourth Streets the traffic light was green, and the last time he looked at the light as they were going into it, it changed to amber color. That when he says "going into it," he meant that just as they hit the intersection the light changed. In other words, half way back in the block the light was green and it turned to amber as they went into the intersection. * * * The bakery truck came from his right. That just as he saw the bakery truck before they hit there Corporal Falkenstine went to the left of the Dodge car parked at the car tracks; that he saw the truck and made a dive to get out of the way. * * * That the collision occurred right in the intersection about six or seven feet from the car tracks * * * That he and Corporal Falkenstine had the only motorcycles with sirens and that they had been operating them all the way out, * * * his siren was still going after the accident." On cross-examination he said the light turned amber just as he reached the stalled roadster, "Just as we were coming to the intersection * * * about at the safety zone," and he "went right on through." He could not say what the state of the traffic lights at the time of the collision was; the last time he saw the traffic light was when he was right near where the parked car was."

The other witnesses for the plaintiff noticed the light was green in the block approaching the intersection, but could not say definitely when it changed to amber. Corporal Falkenstine "some distance from the traffic light noticed that the light at the intersection of Rhode Island Avenue and Thirty-fourth Street was amber." Officer Schultheis "did not particularly notice the traffic lights at the intersection of Rhode Island Avenue and Thirty-fourth Street until they were practically there, when he noticed the lights were on a change. What they were changing to or from he could not tell. * * * That he wasn't interested in what the light was turning to as, if the Governor's car was going through, he would go through, and if the Governor's car stopped, he would stop regardless of whether it was red or green."

Charles N. Brill, "* * * Some little distance before they got to the intersection the traffic light was green for Rhode Island Avenue." He did not look again. "When the motorcycle was struck, the truck was pretty well out toward the car tracks with the front wheels close to the tracks or on them; * * * That the point where the motor-cycle struck the truck was about the middle of the truck."

Melvin V. Shanley drove the open car in which Gov. Ritchie was seated in the inaugural parade, and followed the car to which the Governor had changed out of Washington; "when he last saw the light it was green and that at that time the car that he was driving was about one hundred or possibly one hundred and fifty feet from the intersection and about seventy-five or eighty feet behind the car in which the Governor was riding. On cross-examination he denied that he had ever told a representa-tive of the defendant "that he saw the light turn red when the police were about fifty or seventy-five feet from the intersection. He stated that he had given a written state-ment of what he knew to a representative of the U. S. F. & G. Co. on March 11th, 1933" (one week after the acci-dent). It was then that the court, over objection, on the "understanding that when you call on the other side to produce a paper and it is produced, that ordinarily puts it in evidence," admitted the statement, from which this appears: "When we were within about fifty feet of the intersection of Thirty-fourth Street and Rhode Island Avenue, the traffic light was green. We were traveling about twenty-eight or thirty miles per hour. The sirens had been blowing all the way from Washington and were still blowing when we started to cross the intersection. When the officers were almost half way across Thirty-fourth Street a truck bound west started on the amber light and pulled directly in front of the front officer (Dryden) on the right side. The light had stayed green until my car reached the intersection and then changed amber." If he had been asked and had said that this was a correct account of conditions as he remembered them, it would, of itself, have been evidence legally suffi-

cient to prove primary negligence of the defendant, but the examination of the witness was concluded with the reading of his statement. If the offer in evidence is substantive proof of the facts, then there is sufficient evidence of negligence, as it would put Sergeant Dryden in the middle of the intersection when the light changed from green to amber, and would have the bakery truck entering from red to amber before the intersection on Rhode Island Avenue was cleared of traffic. On the other hand, the only purpose it could serve the plaintiff, except for its effect on the jury, was to set the witness fairly before the jury and tend to relieve him of the imputation that he was not telling the truth, as might be implied from the questions put to him on cross-examination. It was only the demand of the defendant that entitled the plaintiff to offer the statement in evidence. The rule adopted in this state, as stated in 1 *Greenleaf on Evidence,* sec. 563, is, "The production of papers, upon notice, does not make them evidence in the cause, unless the party calling for them inspects them, so as to become acquainted with their contents; in which case the English rule is, that they are admitted as evidence for both parties." *Morrison v. Whiteside,* 17 Md. 452, 459; *Wigmore on Evidence,* sec. 2125; *Clark v. Fletcher,* 1 Allen (Mass.) 53, 57. Ordinarily, such a statement is demanded for the purpose of reflecting on the credibility of a witness. *Boyle v. Boston Elevated Rwy. Co.,* 208 Mass. 41, 94 N. E. 247. Even though called for and inspected, the admissibility of such statements or documents and records depends on their relevancy. *Eckels & Sons Ice Mfg. Co. v. Cornell Economizer Co.,* 119 Md. 107, 114, 86 A. 38. A statement such as was here offered in evidence does not, however, prove the fact; its only purpose is to affect the credibility of a witness *(Boyle v. Boston Elevated Rwy. Co., supra),* and therefore goes to the weight and not to the sufficiency of the evidence. The plaintiff could not have offered it at all, had it not been brought into the case by the defendant's demand.

From the testimony, we gather these facts: About the

center of the block, which was over a hundred feet away approaching the intersection, the light was green, and no witness has it green any nearer the intersection. Falkenstine saw it amber at the safety zone, which is anywhere from forty to seventy feet from the intersection. Dryden first said it turned amber as he entered the intersection, which would have put him over the intersection in two seconds, with three seconds on the amber light to spare.

On cross-examination he said it turned amber when he reached the parked or stalled car, which was in the southerly car track, at the safety zone, and, "Q. That would be A. Just as we were coming up to the intersection. * * * Q. It would be about at the safety zone when you first saw the light turn amber? A. Yes, sir, when I saw it was amber. Q. Then you knew the light was about to change from green to red, officer, didn't you? A. Yes, sir, I knew it was changing to something. Q. But you did not stop? A. No, sir. Q. You went right on through? A. Yes, sir. Q. At the same speed? A. Approximately same speed."

The first answer, that the light was changing to amber as he entered the intersection, is canceled by his answer that it changed back at the safety zone, forty to seventy feet away. Such testimony has no probative force or evidential value. *Slacum v. Jolley*, 153 Md. 343, 351, 138 A. 244. There is no evidence as to where any of those concerned were when the light changed from amber to red, which would be green to the bakery truck awaiting entry into the intersection. The evidence is that none of the Governor's party were within the intersection when the signal changed from green to amber, and any intersecting vehicles would find the intersection clear so far as they were concerned. There is no evidence as to the condition of the signals at the instant of collision (Dryden said he did not know), nor whether the bakery truck started over the intersection before it got a green light. The appellant asks this court to infer that, because the truck was near the center of the street when struck, it was there against the direction of the signals, and the acci-

dent therefore due to its driver's negligence, but to reach this conclusion the jury would have to resort to guesswork and speculation. What Judge Digges said in *Barker v. Whitter*, 166 Md. 33, 38, 170 A. 578, 580, a signalled crossing case, may as appropriately be said here: "This is not a case where the mere happening of the accident raises any presumption of negligence on the part of the defendant, but the burden is upon the plaintiff to show negligence. Speculation as to how or from what cause the accident occurred cannot be allowed to stand for proof, or be made the basis of a verdict in favor of the party upon whom the burden of proof lies. There must be evidence upon which the jury can reasonably and properly conclude that the injury was produced by some negligence or wrongful act of the defendant."

Sergeant Dryden himself gave evidence from which it might be inferred just how the accident did happen. When Corporal Falkenstine turned left to avoid the stalled roadster, he glanced "a second" in that direction, taking his eyes off the road, without reducing his speed, and while that was going on the bakery truck was crossing Rhode Island Avenue, and when he again looked ahead it was in front of him. "He was in front of me. I went to my left (the general direction of the truck). If I knew he was going to keep on going I could have gone to the rear of him." It was in the "second" that he took his eyes off the road that he lost sight of what was going on in front of him, and lost his chance to protect himself. *Sudbrook v. State*, 153 Md. 194, 138 A. 12. It is not necessary to say whether this is such evidence of contributory negligence as to preclude a recovery, because we find the evidence of primary negligence against the defendant legally insufficient.

*Judgment affirmed, with costs.*