# GEORGE W. BROWN

*vs.*

# ELIZABETH R. PATTERSON, Administratrix.

*Automobile Striking Pedestrian—Street Intersections—Prayers—Damages for Personal Injuries.*

Rulings on the prayers may be regarded as a single act, and may be embraced in one exception.                                        p. 297

A prayer that if the jury find that plaintiff was struck by an automobile operated by defendant and was injured, and that such injury was caused by want of ordinary care and prudence of the defendant, and not from the want of ordinary care and prudence on the part of plaintiff, directly contributing to the injury, the verdict must be in favor of plaintiff, *held* properly granted.                                        p. 298

A prayer that if the jury find for plaintiff, they are, in estimating damages, to consider his health and condition before the injury as compared with his present condition in consequence of the injury, and whether the same is in its nature permanent, and how far, if at all, it is calculated to disable him from engaging in those employments for which, in the absence of such injury, he would have been qualified, and also the physical and mental suffering if any to which he was subjected by reason of said injury, and also the medical expenses which he was compelled to incur, and to allow him such damages as in the opinion of a jury will be a fair and just compensation for the injury, *held* properly granted.                                        p. 298

A prayer that, in order to defeat recovery on the ground of contributory negligence on plaintiff's part, the burden of proof is on defendant to show that plaintiff was guilty of negligence, and that such negligence on his part directly contributed to produce the injury, *held* proper.                                        p. 298

In an action for injuries to a pedestrian by an automobile at a street crossing, a prayer that, at the intersection of public highways, all vehicles are required by law to keep to the right

of the center of such highways, and pass to the right of the center of such intersection when turning to the left, *held* properly granted.                                              p. 298

A prayer that, under the laws of this State, pedestrians have the right of way over motor vehicles at street crossings at the intersections of streets in the towns and cities of this State, *held* properly granted, such prayer being properly guarded by another granted prayer, that the statute regulating the operation of all vehicles at the intersection of public highways, and giving to pedestrians the right of way over motor vehicles at street crossings, does not absolve persons or pedestrians from the duty of using reasonable care for their own safety and protection.                                             p. 299

In an action for injuries to a pedestrian as a result of being struck by an automobile, *held* that the evidence of defendant's negligence was sufficient to go to the jury.           p. 299

That, after plaintiff was injured, defendant took him home in his automobile, gave him money from time to time, and employed a physician to look after him, could be accounted for only on the theory that he had caused the injury, it not appearing that he was under any obligation otherwise to provide for him.                                          p. 301

When a law prohibits an automobile from going in a certain direction on a street or highway, or from going beyond the center line of that street or highway, persons using the street have the right to anticipate that the law will not be violated, although they must use due care according to the circumstances.                                           p. 302

When the nature of the act relied on to establish contributory negligence can only be determined by considering all the circumstances attending the transaction, it is within the province of the jury to pass upon and characterize it, and it is not for the court to determine its quality as a matter of law.      p. 304

*Decided June 22nd, 1922.*

Appeal from the Court of Common Pleas of Baltimore City (CARROLL T. BOND, J.).

Action by George W. Patterson against George W. Brown. From a judgment for plaintiff, on a verdict for $2,000, defendant appeals. Plaintiff having died subsequently to the judgment, his widow and administratrix, Elizabeth R. Patterson, was substituted as plaintiff and appellee. Affirmed.

The granted prayers of plaintiff were as follows:

*First Prayer.*—The plaintiff prays the court to instruct the jury that if they shall find from the evidence that the plaintiff was struck by an automobile operated by the defendant, and was injured; and if the jury shall further find that such injury to the plaintiff was caused by the want of ordinary care and prudence of the defendant, and not from the want of ordinary care and prudence on the part of the plaintiff, directly contributing to the injury, then the verdict of the jury must be in favor of the plaintiff.

*Second Prayer.*—The plaintiff prays the court to instruct the jury that if the jury shall find a verdict for the plaintiff, then in estimating the damages they are to consider his health and condition before the injury complained of, as compared with his present condition in consequence of such injury, and whether the same is in its nature permanent, and how far, if at all, it is calculated to disable him from engaging in those employments for which, in the absence of such injury, he would have been qualified, and also the physical and mental suffering if any, to which he was subjected by reason of said injury, and also the medical expenses, if any, which he was compelled to incur, and to allow him such damages as in the opinion of the jury will be a fair and just compensation for the injury which he has sustained.

*Fifth Prayer.*—The plaintiff prays the court to instruct the jury that in order to defeat a recovery in this suit, on the ground of contributory negligence upon the part of the plaintiff, the burden of proof is upon the defendant to show that

the plaintiff was guilty of negligence, and that such negligence on his part directly contributed to produce the injury.

*Sixth Prayer.*—The plaintiff's prays the court to instruct the jury that at the intersection of public highways, in this State, all vehicles are required by law to keep to the right of the center of such highways and pass to the right of the center of such intersection when turning to the left.

*Seventh Prayer.*—The plaintiff prays the court to instruct the jury that under the laws of this State, pedestrians have the right of way over motor vehicles at street crossings at the intersections of streets in the towns and cities of this State.

The following prayers were among those offered by defendant:

*First Prayer.*—The court instructs the jury that under the pleadings in this case there is no evidence legally sufficient to entitle the plaintiff to recover and that the verdict of the jury must be for the defendant.

*Second Prayer.*—The court instructs the jury that there is no evidence in this case of any negligence on the part of the defendant directly contributing to the accident mentioned in the testimony and that the verdict of the jury must therefore be for the defendant.

*Sixth Prayer.*—The defendant prays the court to instruct the jury that the laws of this State, as embodied in chapter 185, section 163, of the Acts of 1918, regulating the operation of all vehicles at the intersection of public highways in this State and giving to pedestrians the right of way over motor vehicles at street crossings in towns and cities of this State, do not absolve persons or pedestrians from the duty of using reasonable care for their own safety and protection.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Charles Jackson,* with whom were *Harry B. Wolf* and *Derlin McKindless* on the brief, for the appellant.

*Edgar Allan Poe* and *J. Kemp Bartlett, Jr.,* with whom were *Thos. A. Hays, Jr.,* and *Bartlett, Poe & Clagett* on the brief, for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a judgment obtained by George W. Patterson against George W. Brown, appellant, for injuries alleged to have been sustained by Patterson, by being struck by the automobile of Brown, at or near the corner of Myrtle Avenue and Harlem Avenue in the City of Baltimore. After the judgment was obtained, Mr. Patterson died and his widow, Elizabeth R. Patterson, who has been appointed administratrix, suggested his death and appeared in this Court, as party plaintiff, appellee.

The only bill of exceptions in the record which clearly presents the rulings of the court is that in reference to the two prayers offered by the defendant—the first that, under the pleadings, there was no evidence legally sufficient to entitle the plaintiff to recover, and the second that there was no evidence of any negligence on the part of the defendant directly contributing to the accident, each of them concluding with a direction for a verdict in favor of the defendant. Whether or not the defendant intended to press the exception to the granting of the plaintiff's prayers, and the trial judge intended to certify to his rulings on them by that bill of exceptions, is not clear to us, and did not seem to be to the appellee. While we have in many cases pointed out that there cannot be embraced in one bill of exceptions rulings on various questions, we have said that rulings on the prayers may be regarded as a single act, and may be embraced in one exception. So we have no difficulty about including the rulings on the prayers in one bill of exceptions, but as to whether it was intended to have us review the action of the

court in granting the plaintiff's prayers, we are in some doubt owing to the way the bill of exceptions was prepared, but we will, as briefly as we can, refer to them.

Passing for the moment the prayers of the defendant as to the legal sufficiency of the evidence, there can be no question about the plaintiff's first prayer. It is very similar to the plaintiff's first prayer in *Phila., W. and B. R. R. Co.* v. *Hogeland,* 66 Md. 162, where JUDGE ALVEY said in reference to those granted, which included the first: "Indeed, all the instructions given on the prayers of the plaintiff are but plain, legal propositions that admit of no controversy in this Court, where they have been repeatedly sanctioned." That was over thirty-five years ago, and a similar prayer has been granted and approved over and over again in negligence cases, although, of course, there may be circumstances in a case making such a prayer too general, or for other reasons objectionable. See, for illustration, *Chiswell* v. *Nichols,* 137 Md. 291, 307; *United Rwys. & Elec. Co.* v. *Crain,* 123 Md. 332, 349.

Plaintiff's second prayer is the usual damage prayer in such cases, and is similar to the sixth in *Hogeland's Case.* His fifth is the familiar prayer in use in reference to the burden of proof as to contributory negligence, and is substantially the same as the fifth prayer in *Hogeland's Case.* See also, *Balto. & O. R. R. Co.* v. *Stumpf,* 97 Md. 78, 90. The plaintiff's sixth prayer instructed the jury as to the duty of drivers of vehicles to keep to the right of the center of the highway at the intersection of public highways. If any criticism of that prayer could be made, it might be said that it was not as full as it might have been, but it was to the point, and a very important point in this case, and the defendant's sixth prayer, which is in the record, apparently put there by the appellant, who had control of the record, although not printed in the bill of exceptions, instructed the jury that the regulations in section 163 of chapter 85 of the Acts of 1918 (our law on the subject) "do not absolve persons

or pedestrians from the duty of using reasonable care for their own safety and protection." Although Harlem Avenue does not cross Myrtle Avenue, it is an intersecting highway within the meaning of this statute. *Buckey* v. *White,* 137 Md. 124, 129.

In passing on the question of the legal sufficiency of evidence to take a case to the jury, in *Chiswell* v. *Nichols,* on page 305 of 137 Md., that section of article 56 of the Code is specially referred to, and in *Buckey* v. *White,* 137 Md. 124, it was regarded as evidence of negligence to violate the regulations in that section. The plaintiff's seventh prayer instructed the jury that under the laws of this state, pedestrians have the right of way over motor vehicles at street crossings at the intersection of streets in the towns and cities of the State. As shown above, the defendant's sixth prayer, which was granted, properly guarded that prayer, if there was any danger of its being misleading. It will thus be seen that we do not find any error in the plaintiff's prayers which were granted, if the defendant's first and second were properly rejected, which we will now consider.

This case is an unusual one, as the appellant denies that his automobile sruck Mr. Patterson, and claims that the latter fell without being struck, while there is considerable evidence as to his injuries, which as alleged were the result of the automobile striking him and knocking him down. We are not called upon to determine which of the contentions is right, but only as to the legal sufficiency of the evidence to take the case to the jury. Although conflicting, there is, in our opinion, ample evidence tending to sustain plaintiff's side of the controversy, both as to the negligence of the defendant and the alleged contributory negligence of the plaintiff. Mr. Patterson testified that he came out of the store or office of his employer, William H. Wilhelm, which was on Myrtle Avenue, a few doors from Harlem, walked towards the southwest corner of Myrtle and Harlem Avenues, and started to go across Harlem Avenue, intending to go to the shop of his

employer, on Shields Alley, which connects with Hoffman Street. That required him to cross Myrtle Avenue at some point and although, when he was called to the blackboard to point out the place where he was struck, he designated a point on Myrtle Avenue not far from Wilhelm's office, he stated several times that he was struck at the corner of Myrtle and Harlem Avenues. There is some confusion in the record as to the description of the streets and corners, and the plaintiff was evidently confused when he undertook to point out, on the blackboard in use in the court room, the point where he was struck. That is not an unusual experience with witnesses when called upon to designate upon a plat or blackboard some point spoken of, and as the trial was nearly two years after the accident and in the meantime the plaintiff, who was then in his seventy-third year, had become a very different man physically from what he was before the accident, as testified to by his physician and others, some confusion might well be expected. But that is not very material, as the defendant himself and his companion in the automobile, Rev. John A. Holmes, both said the plaintiff was crossing Harlem Avenue when what occurred did occur—they claiming that the car did not strike him, but that he had fallen from some other cause.

The plaintiff swore that he was about two steps from the curb when "Brown came along with his machine and struck me in the hip and knocked me down." He said the car ran over his ankles and hip and his feet and ankles swelled up to twice their size. Dr. Williams, of Elkridge, where Patterson lived, testified that he was called in to examine him on the 8th day of November, 1919, which was the day of the accident, and found him badly bruised: that his right hip joint was injured, bruised, his left ankle joint, his right instep and both legs from the knees to the ankles were bruised, black and inflamed, and in some places blue, inflamed and swollen. Mr. Patterson's wife also described the injuries very much in the same way.

In addition to that, the appellant took Patterson home in his car and went to Elkridge to see him several times afterwards. Dr. Williams said that he came to him the day Patterson was injured and asked him to take charge of the case and give him all the treatment that was necessary, and said he would pay him; that he did pay him five dollars on the day he was called in. Mrs. Patterson said that Brown left a five dollar bill and said, "I will be out again in a short time," and that "he came again on the 25th and threw a $20 note on the table and said, 'There, that will tide you over, won't it?' I said, 'Do you mean altogether?' and he said, 'I will be out again next week.' He came again on the 11th of December and wrote out a check for $12 to cover our rent." It was commendable in Brown to treat Patterson kindly, and when he saw he was in some way injured, he might out of pure kindness have taken him home in his automobile, but his subsequent visits, payments of money, and his employment of the physician can only be accounted for on the theory that he had done the injury, as there is nothing in the record to suggest that he was under any obligation to provide for him. Mr. Wilhelm said he met Brown at the corner as two men were bringing Patterson to his office after the injury, and Brown said, "We had an accident" and that Brown called up the Traffic Commissioner to report the accident from his shop, as he was required to do within 24 hours, if he had an accident resulting in injury to any person, by section 151 of chapter 85 of the Acts of 1918.

It is true that Brown and some of his witnesses denied some of these statements, and gave a different version of the accident, but the conflict was for the jury, and there was ample evidence tending to prove that the defendant had struck the plaintiff. There was also evidence of the negligence of the defendant. He was on the wrong side of the street when he struck the plaintiff, if he did strike him, as much evidence tends to show. Mr. Wilhelm said that, when he went to the corner of Harlem and Myrtle Avenues, "he

saw the automobile pointed west on Harlem Avenue about forty feet from the corner near the curb on the south side of the eastbound traffic; that he told Brown it was on the wrong side of the street and that he had better bring it down in front of the store, which Brown did." The evidence of the defendant himself sufficiently shows that he was on the wrong side of the street, although he attempts to explain that, to some extent, by saying that he was trying to avoid striking the plaintiff, but he was turning from Myrtle Avenue into Harlem Avenue, and as there were some wagons and carts ahead of him, in getting into Harlem Avenue he was evidently taking a shorter cut than the statute permits. The trouble is that so many drivers of automobiles get the speed mania to such an extent that they seem to think that anyone interfering with their movements on the public highway is encroaching on their legal rights. We do not mean to say that the defendant was in that class, as we do not know, but there is enough in the record to show that he was trying to move more rapidly than he had been doing. If the owners and drivers of automobiles who respect the rights of pedestrians and others who have equal, if not superior, rights in the use of the highways, would be more active in aiding the authorities to stop violations of the laws, which were passed for the protection of the lives and limbs of the people, by those who do not hesitate to take short cuts and quick runs regardless of other people, there would be less complaint about the use of the highways by automobiles, and more protection to those who endeavor to keep within the law.

When a law prohibits an automobile from going in a certain direction on a street or highway, or from going beyond the center line of that street or highway, persons using the street or other highway are not required to be constantly anticipating a violation of such law, and have the right to assume that it will not be violated, although, of course, they must use due care according to the circumstances. A man is not prohibited from using the streets because he has reached old

age, and motorists must understand that the aged and children have the right to, and do use them with other people. Drivers have no right to be running their cars on the theory that every pedestrian must not only keep up a constant outlook for cars, regardless of how they are run, but be prepared to jump or become athletic in getting out of their way. The plaintiff testified that he did not hear the horn of the automobile or any signal given, and that he did not see the car coming. There is no evidence that his hearing or sight was impaired at the time of the accident, although there was testimony that at the time of the trial his sight was impaired. The plaintiff testified that before the injury he was an active, steady tinworker, able to repair rainspouts, roofs and gutters, and to go up and down roofs. His employer said he considered him a first class worker, did regular tinning work, and would have to climb ladders forty feet high or swing in a chair; that he did that kind of work up to the day he was hurt and lost very little time. It does not necessarily mean that Patterson failed to hear the horn blow because he was not paying attention, or using due care, even if it was sounded, as one might hear a horn in a city without knowing it was on an automobile which might strike him—especially if it was on the wrong side of the street, as he would have no reason to anticipate that one was running there. The defendant and his companion testified that the car did not strike Patterson, but there was ample evidence from which the jury could have found that that was not correct, as it must have found, as shown by the verdict; and if the jury believed that Patterson would have heard the horn if it was sounded before he was struck, it may have concluded that Brown did not sound the signal until it was too late to be of use.

The attorneys have exhibited considerable diligence in collecting the authorities on the questions involved, but after all the circumstances of each particular case must control, as a general rule. There may be some prominent and decisive act of negligence on the part of the plaintiff which calls upon

the court to dispose of the question as a matter of law, but "when the nature of the act relied on to establish contributory negligence can only be determined by considering all the circumstances attending the transaction, it is within the province of the jury to pass upon and characterize it, and it is not for the Court to determine its quality as a matter of law." *Washington & Rockville Rwy. Co.* v. *Sullivan* 136 Md. 202, 209, where other cases to the same effect are cited. Cases might be cited by the score from our own reports on negligence and contributory negligence, but without prolonging this opinion further by referring to others, our conclusions are that on the question of negligence of the defendant there is too much evidence tending to prove that, to admit of any doubt as to whether the case was properly submitted to the jury on that point, and, as to the alleged contributory negligence of the plaintiff, it is only necessary to say that there was at least sufficient doubt to make it a question for the jury, and not to permit the court to declare as a matter of law that he was guilty of contributory negligence. It follows that the judgment must be affirmed.

> *Judgment affirmed, the appellant to pay the costs above and below.*