RICHARD M. MERRIFIELD *vs.* C. HOFFBERGER COMPANY.

*Injury by Automobile—Pedestrian at Street Crossing—Contributory Negligence—Duty of Driver—Evidence.*

To justify the trial court in withdrawing the case from the consideration of the jury on the ground of contributory negligence by the plaintiff, the evidence must show some prominent and decisive act on plaintiff's part which directly contributed to the accident and was the proximate cause thereof, and this negligent act must be of so prominent and decisive a character as to leave no room for difference of opinion thereon by reasonable minds.                                              p. 137

In reviewing the action of the court in directing a verdict for defendant, the appellate court must take plaintiff's evidence as true, assume all legitimate inferences deducible therefrom, and place thereon that construction which is most favorable to plaintiff's right of recovery.                              p. 138

Evidence that defendant's truck traversed a distance of from seventy-five to one hundred and five feet while plaintiff was walking a distance of twelve or fifteen feet, and that, after the truck hit defendant, it continued one hundred and sixty-six feet

before being stopped, would warrant the jury in deciding that the speed of the truck was above fifteen miles per hour, in violation of Code, art. 56, sec. 149, subsec. 3.          p. 140

Code, art. 56, sec. 163, providing that pedestrians shall have the right of way at street crossings in towns and cities except where traffic is controlled at such crossings by traffic officers, in effect requires drivers of automobiles, when approaching street crossings and passing over the way used by pedestrians, to slacken speed and have the automobile under such control as to be able to avoid collision with a pedestrian, either by stopping the automobile or diverting its course.          p. 140

A pedestrian on a street crossing has the right to assume that the driver of an automobile will obey the law, and, if the speed at which he and the automobile are moving, if continued by both, will bring them in contact, that the driver of the automobile will so slacken its speed, or divert its course, as to avoid the collision.          p. 140

Even in the absence of any statute giving the pedestrian the right of way at a street crossing, it is not incumbent upon him at such crossing to use an extraordinary degree of care in keeping out of the way of an automobile.          p. 141

The amount of care which the law requires one to exercise is commensurate with the consequences of his failure to do so.          p. 141

At crossings, all drivers, particularly of motor vehicles, must be highly vigilant and maintain such control that on the shortest possible notice they can stop their cars so as to prevent injury to pedestrians.          p. 141

The duty generally of a pedestrian is to exercise ordinary or reasonable care, and not act in a manner contrary to that of an ordinarily prudent and careful person under similar circumstances.          p. 142

The pedestrian has the right to assume, especially at points where under the law he is given the right of way, that the driver of an automobile will also exercise due care and approach the crossing with his machine under proper control.          p. 142

In an action for injuries to a pedestrian, struck by a motor truck while on a street crossing after having alighted from a

street car, *held* that the question of his contributory negligence
was for the jury.                                         p. 143

Where reasonable minds might well differ as to whether one's
act was of such a character as would not be followed by a rea-
sonably prudent and careful person, the question whether such
act constituted contributory negligence is for the jury.    p. 143

*Decided January 15th, 1925.*

Appeal from the Baltimore City Court (DUFFY, J.).

Action by Richard M. Merrifield against the C. Hoffberger
Company. From a judgment for defendant, plaintiff ap-
peals. Reversed.

The cause was argued before PATTISON, URNER, ADKINS,
OFFUTT, DIGGES, BOND, and PARKE, JJ.

*Webster S. Blades,* with whom were *Blades, Rosenfeld &*
*Frederick* on the brief, for the appellant.

*L. Wethered Barroll* and *Fendall Marbury,* for the ap-
pellee.

DIGGES, J., delivered the opinion of the Court.

On July 9, 1923, at about ten minutes of 7 o'clock in the
morning, the appellant, Richard M. Merrifield, was struck,
knocked down, and seriously injured by a truck admittedly
belonging to the defendant, and at that time being driven by
a servant of the defendant admittedly acting within the scope
of his employment and upon the defendant's business. To re-
cover damages as compensation for the injuries sustained,
the appellant instituted suit in the Baltimore City Court
against the defendant below (appellee here), the C. Hoff-
berger Company, a body corporate. A jury was empaneled,
and at the conclusion of the evidence adduced on behalf of
the plaintiff, the defendant offered the following prayer, which
was granted by the trial court: "The court instructs the jury

that it appears from the uncontradicted evidence in this case that the plaintiff Merrifield was guilty of negligence directly contributing to the accident, and that, therefore, their verdict must be for the defendant." The effect of the court's action upon this prayer was to direct a verdict for the defendant, and the docket entries show: "6th June, 1924. Verdict in favor of the defendant under instructions granted by the court"; and further, that after a motion made by the plaintiff for a new trial was overruled, judgment on that verdict was made absolute in favor of the defendant for costs. From that judgment this appeal arises. The plaintiff excepted to the granting of the defendant's prayer, and this constitutes the single bill of exception as presented by the record.

In granting the defendant's prayer the lower court decided, as a matter of law, that the evidence adduced on behalf of the plaintiff affirmatively proved that the plaintiff was guilty of contributory negligence. Whether or not this is true, is the single question raised by the appeal, and in order for us to determine it, we must examine the evidence presented by the record. Before doing this it may be well to state that the law, as declared by this Court and supported by the great weight of authority elsewhere, is that to justify the trial court in withdrawing the case from the consideration of the jury on the ground of contributory negligence by the plaintiff, the evidence must show some prominent and decisive negligent act on the part of the plaintiff which directly contributed to the accident and was the proximate cause thereof, and that this negligent act must be of so prominent and decisive a character as to leave no room for difference of opinion thereon by reasonable minds. *Balto. & O. R. R. Co. v. Hendricks,* 104 *Md.* 84; *Cook v. Traction Co.,* 80 *Md.* 558; *Taxicab Co. of Baltimore v. Emanuel,* 125 *Md.* 246. In the case last cited, at page 259, we said: "The act relied on to establish as a matter of law the existence of contributory negligence must be distinct, prominent and decisive, and one about which ordinary minds would not differ in declaring it to be negligent. Where the nature and attributes of an act

relied on to show negligence contributing to an injury sustained can only be determined correctly by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to determine its quality as a matter of law." The evidence in this case is not voluminous, and consists of the testimony of the plaintiff and of one other witness, Gearhart, who saw the accident. In deciding this question we are bound to take that evidence as being true, to assume all legitimate inferences deducible therefrom, and place upon it that construction which is most favorable to the plaintiff's right of recovery.

The facts are these: That the plaintiff was employed at 1623 John Street; that on proceeding to his place of employment on the morning of the accident, at Harford Road he boarded an electric car traveling west on North Avenue, and got off of that car at North Avenue and John Street from the front end thereof; that North Avenue runs east and west, and John Street north and south; that there are double street railway tracks on both North Avenue and John Street at their intersection, those on John Street turning westerly into North Avenue; that on the south side of the track on North Avenue used for east-bound traffic there is a platform about fifty feet long, the eastern end of which is on North Avenue about sixty feet from the west line of John Street; that North Avenue at this point is sixty-five or seventy feet wide, and John Street about forty-five feet in width, and the double tracks are in the center of each of these streets; that between the tracks on North Avenue there are poles for supporting the electric wires, and that one of these poles is a little to the east of the east line of John Street; that the path or way for pedestrians crossing from the point where the plaintiff alighted from the street car to the southeast corner of North Avenue and John Street was alongside of the said pole described as standing between the tracks a little east of the east line of John Street; that when the plaintiff alighted from the west-bound car, which had stopped to discharge passen-

gers just before reaching the east line of John Street, while the car was still stationary, the plaintiff walked around the front of the car, following the pedestrian way, reached the pole standing between the tracks, and while there looked west on North Avenue and saw an east-bound car taking on passengers at the platform located west of John Street; he then took out his pipe and proceeded to light it by striking a match on the trolley pole near him, after which he looked again and saw that the eastbound car had left the platform and the front of it had proceeded about thirty feet; he then went across the south, or eastbound track, and when he reached a point five feet south of that track he was struck by the defendant's truck. The witness Gearhart was standing on the southeast corner of North Avenue and John Street, or the point to which the plaintiff was proceeding, and his testimony is the same as the plaintiff's, with the exception that he says that at the time of contact the east-bound car had not left the platform, but the doors of the car were just being closed preparatory to leaving. The truck causing the injury came east on North Avenue and was not seen by the plaintiff before the contact, although he had looked in the direction from which it came, twice, while standing near the pole. The plaintiff was knocked down by the truck, and when picked up was lying parallel to the south track on North Avenue, and the truck, after the contact, continued west on North Avenue for a distance of 150 to 166 feet before being brought to a stop.

From this evidence it will be seen that the plaintiff was using the regular and usual way established for pedestrians, and that the view of his position by the driver of the truck was unobstructed, according to Gearhart's testimony, for a distance of 110 feet, and according to the plaintiff's testimony, was unobstructed for a distance of 75 feet. The question, therefore, is whether under such conditions the plaintiff, as a matter of law, was guilty of contributory negligence in continuing on the way provided for pedestrians to the point of contact.

Section 149 of article 56, Code of Public General Laws of Maryland, subsection 3, under the title "Speed of Motor Vehicles," provides: "No motor vehicle shall be operated upon any public highway of this State at a rate of speed exceeding fifteen miles an hour in the thickly settled or business parts of cities, towns or villages"; and section 163 of the same article, under the sub-title "Rules of the Road," provides that: "All pedestrians shall have the right of way at street crossings in the towns and cities of this State except where traffic is controlled at such crossings by traffic officers. Between street crossings in such towns and cities vehicles shall have the right of way." If the defendant was complying with subsection 3 of section 149 he should not have been driving the truck at a speed exceeding 15 miles an hour, and in view of the testimony, which shows that the truck traversed a distance of from 75 to 105 feet while the plaintiff was walking a distance of 12 or 15 feet, and that after the contact the truck continued for a distance of 166 feet before being stopped, such testimony would warrant the jury in deciding that the speed of the truck was above 15 miles per hour. Section 163 required that the truck should give pedestrians the right of way at street crossings, and the effect of such statutory requirement is that drivers of automobiles, when approaching street crossings and passing over the way used by pedestrians, must slacken the speed of the automobile and have the same under such control as to be able to avoid a collision with a pedestrian, either by stopping the automobile or diverting its course.

The driver of this truck had an unobstructed view of the plaintiff for a sufficient distance, if he was exercising the care which the law under such circumstances requires, as would have enabled him to avoid the contact by giving to the plaintiff the right of way which the statute requires. The plaintiff had the right to assume that the driver of the truck would obey the law, and that, if the speed and direction at which he and the automobile were moving, if continued by both, would bring them in contact, the driver of the automobile would so slacken the speed of his truck, or divert its

course, as to avoid the collision, because this he was bound to do. This rule of law may be at variance with the common belief of many operators of motor vehicles, as indicated by the apparent tendency of many users and drivers of automobiles to recklessly disregard the rights of other users of the thoroughfare, and particularly is this true in respect to the rights of pedestrians. A large number of drivers of automobiles, knowing that a collision with a pedestrian rarely results in injury to the machine or its driver, act as if it is incumbent upon one traveling on foot to use an extraordinary degree of care in keeping out of the way of an automobile, or else be maimed or killed. This is not the law, even though there be no statute which gives the pedestrian the right of way at a street crossing, for the simple reason that the consequences incident to a collision between an automobile and a pedestrian are much more serious to the pedestrian than to the automobile, and the rule properly is that the amount of care which the law requires one to exercise is commensurate with the consequences of his failure to do so.

Without statutory provision, there is and should be, a greater amount of care required of drivers of motor vehicles at street crossings, because of perils to pedestrians using them, under modern traffic conditions, and the duty of care which is cast upon the driver of such a vehicle is of a high degree. Vehicles may have the right of way on a portion of a street or highway set aside for them, but at crossings all drivers, particularly of motor vehicles, must be highly vigilant and maintain such control that on the shortest possible notice they can stop their cars so as to prevent injury to pedestrians. In *Wiedner v. Otter,* 171 Ky. 167, the court said: "It is a familiar rule of the law of negligence that the care to be exercised must correspond with the capacity to injure, and accordingly the automobilist is under a much higher degree of care to look out for the pedestrian than the pedestrian is to look out for the automobilist. The pedestrian cannot merely by the manner in which he uses the street harm the automobilist, but the automobilist may by his manner of using the street kill the pedestrian; and so,

generally speaking, the pedestrian is only required to look after his own safety and not the safety of others; while the automobilist must look out for the safety of the pedestrian rather than his own." This rule has added force, and is supported by additional reasons, when the automobilist is approaching a street crossing where under the law the pedestrian is given the right of way. The duty generally of a pedestrian is to exercise ordinary or reasonable care and not act in a manner contrary to that of an ordinarily prudent and careful person under similar circumstances. These acts must necessarily vary, dependent upon the conditions and circumstances, and so what might be prudence in one case may be negligence in another and downright foolhardiness in still another. The rule, as stated by Judge Cardozo in the case of *Knapp v. Barrett,* 216 N. Y. 226, is as follows: "A wayfarer is not at liberty to close his eyes in crossing a city street. His duty is to use eyes and thus protect himself from danger. The law does not say how often he must look, or precisely how far, or when, or from where. If, for example, he looks as he starts to cross and the way seems clear, he is not bound, as a matter of law, to look again. The law does not even say that because he sees a wagon approaching he must stop until it has passed. He may go forward unless it is close upon him, and whether he is negligent in going forward will be a question for the jury. If he has used his eyes and has miscalculated the danger, he may still be free from fault."

It is well to remember that the rigorous rule applicable to steam railroad crossings is necessarily relaxed at the usual street crossing, and the pedestrian has the right to assume, especially at points where under the law he is given the right of way, that the driver of an automobile will also exercise due care and approach the crossing with his machine under proper control. In *Berry on Automobiles* (4th Ed.), page 328, sec. 330, under "Pedestrians having the Right of Way at Crossings," it is said: "It means no more than that when two or more persons moving in different directions approach a crossing at the same time or in such manner that if both

or all continue their respective courses there is danger of collision, then the one having the preference is entitled to the first use of such crossing, and it is the duty of others to give him reasonable opportunity to do so." And the court, in the case of *Johnson v. Johnson,* 85 Wash. 18, when passing upon this question of pedestrians having the right of way at crossings, said: "It certainly does not mean that the driver of the truck or automobile would have a right to use the intersection without any regard for the rights of pedestrians, or in such manner as would require the latter, as a matter of right, to stop and yield the right of way." The appellant in this case had the right of way, which meant that if, while proceeding, his course and that of the defendant's truck would bring them in contact at a given point in the pedestrian's way, he was not required to stop or diverge from his course so as to give the truck the right of way, but on the contrary, under such conditions it was the duty of the driver of the truck to stop or diverge so as to give him the right of way, and the appellant had the right to assume that this course would be followed by the driver of the truck, not alone because the consequence resulting from a failure of the driver of the truck to do this would be extremely serious, but for the further and controlling reason that the statute required the driver to do so.

Under the circumstances and conditions surrounding this accident, as disclosed by the testimony, we cannot say that the plaintiff was, as a matter of law, guilty of contributory negligence. The act of the appellant was not of such a character as would not be followed by a reasonably prudent and careful person; at least reasonable minds might well differ on this point, and if such is the case, under the authorities laid down by this Court, the question should be submitted to the jury. From what we have said it follows that the prayer of the defendant should have been refused, and the action of the lower court in granting it was error, by reason of which the judgment must be reversed.

*Judgment reversed, and new trial awarded,*
*with costs to the appellant.*