WILLIAM J. BARKER *v.* CROFTON S. WHITTER.
[No. 81, October Term, 1933.]

34

*Decided January 16th, 1934.*

The cause was argued before BOND, C. J., PATTISON. ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*Daniel S. Sullivan,* with whom was *Edwin W. Wells* on the brief, for the appellant.

*E. Paul Mason,* with whom was *M. Harrison Chambers* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

This is the defendant's appeal from a verdict and judgment in favor of the plaintiff for injuries in favor of the plaintiff for injuries sustained by being struck by a taxicab owned and driven by the defendant. The important questions raised by the appeal are two: First, does the record disclose evidence of primary negligence on the part of the defendant; and, second, if so, does it present such a decisive negligent act on the part of the plaintiff, contributing to the happening of the accident, as would bar recovery on the ground of contributory negligence?

The accident happened at noon, December 8th, 1932. It was a clear day, and the streets were dry. The point of collision was east of the pedestrian crossing on Fayette Street, east of Gay Street, in Baltimore City. The plaintiff's evidence shows that the defendant's taxicab was proceeding east on Fayette Street, and, after crossing Gay Street and getting beyond the easternmost line of the lane of pedestrian traffic, that is, after the taxicab had gotten entirely across

Gay Street, and had passed the way legally usable by pedestrians desiring to cross Fayette Street east of Gay, his taxicab collided with the plaintiff, knocked him down, and seriously and permanently injured him; that Fayette Street at the point of contact is 68 feet 8 inches wide; that there is a white line at this point marking approximately the center of Fayette Street; that Gay Street at the point of intersection is approximately 39 feet 6 inches wide; that traffic at the intersection of Fayette and Gay Street is controlled by traffic lights, so set as to Gay Street as to show the green to traffic proceeding across the intersection on Gay Street for 26 seconds, then showing amber 3 seconds, then red 24 seconds, that is to say, the revolution of light to one crossing the intersection on Gay Street would be in this order, a green light for 26 seconds, amber 3 seconds, red 24 seconds, amber 3 seconds, and then green again. For one crossing the intersection on Fayette Street, the lights would show green 24 seconds, amber 3 seconds, red 26 seconds, amber 3 seconds, and then green again. Gay Street runs north and south, and Fayette Street east and west. There is a double car track on Fayette Street west of Gay Street, which turns north into Gay Street at the intersection. There is also a double car track on Gay Street, both north and south of Fayette. The northernmost rail of the car track on Fayette Street west of Gay is forty-three feet six inches from the north curb of Fayette Street.

The witness Moore, produced on behalf of the plaintiff, testified that at the time of the accident he had just left the northwest corner of Gay and Fayette Streets and was proceeding across Fayette Street on the west side of Gay; that when he left the curb he noticed the traffic lights and they were green, that is, giving the right of way to him; that, when he reached the northernmost rail of the car track, he saw the taxicab coming east on Fayette Street up to the intersection, and "jumped back" to avoid being struck, and at that moment he noticed the traffic light, and it was amber; that the taxicab did not stop, but continued across Gay Street, and immediately he heard the contact between the

taxicab and the body of the plaintiff; that he does not know what the light showed at the moment of contact; that he turned to his left, upon hearing the contact, and saw the taxicab stopped and the plaintiff lying on the street fifteen or twenty feet east of the pedestrian right of way; that the defendant got out of the taxicab and with the witness' assistance put the plaintiff in the taxicab, and the three of them proceeded to the Church Home and Infirmary, the hospital where the plaintiff requested to be taken; that, at the time the witness "jumped back" from the northernmost rail of the car track on Fayette Street west of Gay, there were several cars stopped on the west side of Gay Street awaiting change of the traffic light. The witness further said that, as the taxicab passed him, it was going "pretty fast"; that he does not know how much time elapsed between the time the car passed and the time of the accident, but that it was a very short time; that, at the time the taxicab passed him, none of those cars on the west side of Gay Street, waiting for the change of the light, had started; they were standing abreast; that he does not say they were still standing there when the accident happened, but they were there when the taxicab passed him.

The plaintiff's witness Ament testified that he did not see the impact, but when he looked he saw the plaintiff lying in the middle of the street; that, when he got there, two gentlemen were putting the plaintiff in the taxicab; that the taxicab was on the south side of the white line marking the center of Fayette Street; that he does not know how far he was east of Gay Street; "it might have been about ten or twelve feet." The plaintiff's witness Evans, who had charge of the parking place on Fayette Street between Gay and Frederick, and was working there on the day of the accident, testified that he heard the impact and went out of his office; that, as he did, he saw a man lying in the street; that he did not see the taxicab hit the man; that at that time a customer of his came in the parking place, and, after giving the customer a ticket, the witness stopped and turned around and looked, and the defendant had gotten out and

picked the gentleman up, put him in the cab, and drove away with him. The witness said the rear wheels of the taxicab were sitting right on the pedestrian walk, that the left front wheel of the taxicab was across the center line: "Q. How far was Mr. Whitter from the front of the taxicab when you saw him lying there in the street? A. When I seen him I judge him to be about ten feet, something like that; I did not measure it, of course"; that he was looking at the place of the accident when the witness Moore came there; that he saw Mr. Moore come over, but he did not know who he was at the time; that he could not say whether there was lots of traffic on Fayette Street, he did not notice; that machines probably went east while he was looking; that "when you get used to seeing automobiles, you don't notice them"; that he did not notice any; that he did not see a street car stopped on any one of the corners; that he did not notice any pedestrians going up and down Gay Street; that there was nothing to call his attention to any of these pedestrians.

The plaintiff's witness Mrs. Block testified that she was on a Gay Street car, bound south, occupying the seat near the front and on the left side of the car; that the car stopped on the north side of Fayette Street to let out passengers; that, after the passengers were out, the street car started up and then stopped suddenly with a jerk; that the sudden stopping attracted her attention, and she looked to the east on Fayette Street; that "she happened to glance up and look out of the window, and as she looked she saw this body sliding across the street," but she did not see the impact "or anything like that"; that all she saw was the taxi standing there and the body sliding over across the street; that when she looked the body was sliding, it had started, she saw it moving, it was sliding when she saw it; that she did not see the impact or what caused the body to slide; that she would say the body stopped a yard from the white line in the middle of the street; that the taxicab was past the pedestrians' crossway and was standing still when she looked; that she saw a lady get out of the cab on the other side and walk away; that

she did not get off the car; that, according to her estimate, the plaintiff's body was about a yard and a half from the taxicab; that she did not notice the traffic lights; that neither the motorman nor any other person got off the car, except the passengers she had mentioned.

The trial court refused a prayer offered by the defendant directing a verdict in his favor because of lack of sufficient evidence to show primary negligence on his part. This is not a case where the mere happening of the accident raises any presumption of negligence on the part of the defendant, but the burden is upon the plaintiff to show negligence. Speculation as to how or from what cause the accident occurred cannot be allowed to stand for proof, or be made the basis of a verdict in favor of the party upon whom the burden of proof lies. There must be evidence upon which the jury can reasonably and properly conclude that the injury was produced by some negligence or wrongful act of the defendant. *Baltimore & P. R. Co. v. State, use of Abbott,* 75 Md. 152, 23 A. 310. In passing upon such a prayer, it is thoroughly well settled by many decisions of this court that the evidence on behalf of the plaintiff must be taken as true, and the court must assume all legitimate inferences deducible therefrom, and place thereon that construction which is most favorable to the plaintiff's right of recovery. *Merrifield v. C. Hoffberger Co.,* 147 Md. 134, 127 A. 500.

With this rule of law in mind, let us consider the acts of the defendant which are claimed to be negligent. First, as to speed: The only testimony offered by the plaintiff on this point is that of the witness Moore, who stated that the taxicab when it passed him was going "pretty fast"; and the testimony of the defendant himself that he was driving from seventeen to nineteen miles an hour. This testimony does not show excessive speed under the circumstances, and standing alone, is not sufficient upon which a jury can base a verdict on the ground of speed amounting to recklessness or negligence. Especially is this true when we consider the physical facts, as well as the testimony offered on behalf of the plaintiff that the taxicab stopped immediately upon coming in

contact with the plaintiff. The only other act of primary negligence which has been shown, either by positive testimony or by inference, is that as to the traffic lights, principally by the witness Moore. It is contended by the appellee that Moore's testimony to the effect that, when the taxicab passed him on Fayette Street, west of Gay, the traffic light was on amber, is sufficient to take the case to the jury on that point, and that therefore the jury could find that the defendant crossed Gay Street while the light was on amber, which would constitute negligence. We do not think such a contention warrants the conclusion. Such an inference is highly speculative, because it is undoubtedly true that the light remains on amber only three seconds, and it is as reasonable to suppose that it turned from amber to green the instant after the witness Moore looked at it, as it would be to suppose that it remained on amber three seconds thereafter. To predicate negligence on such testimony, where the burden rests upon the plaintiff, would be in the highest nature speculative, and is not sufficient to warrant the submission of the case to the jury. *Baltimore & P. R. Co. v. Stale, use of Abbott, supra.*

Disregarding what we have said in respect to primary negligence, and admitting for the sake of the discussion of the second proposition that there was sufficient evidence of primary negligence, which we have heretofore held this case does not contain, it is clear that there is an insuperable bar to the plaintiff's recovery, occasioned by his own negligence which directly contributed to the accident and his injury. There is an absolute failure on the part of the plaintiff to produce any evidence to show or tending to show that the contact between the defendant's taxicab and the plaintiff occurred at the pedestrian's crossing. On the contrary, all of the plaintiff's evidence indicates that he was struck east of the pedestrians' way and between street intersections. Section 209 of article 56 of the Code (Supp. 1929) provides: "All pedestrians shall have the right of way at street crossings in the towns and cities of this state, except where traffic is controlled at such crossings by traffic officers. Between

street crossings in such towns and cities, vehicles shall have the right of way." *Merrifield v. Hoffberger Co., supra; Webb-Pepploe v. Cooper,* 159 Md. 426, 151 A. 235; *Slaysman v. Gerst,* 159 Md. 292, 150 A. 728; *Doble v. United Railways & Electric Co.,* 155 Md. 343, 142 A. 106. In addition, we have the testimony of the witness Skolnik, a justice of the peace, and the only witness who saw the plaintiff just prior to and at the time of the impact, and who it is not shown could possibly have had any bias or interest in the matter, and who the record shows told the defendant at the time of the accident that the defendant was not in fault, and left the defendant his card bearing his name and address, in case he should need his testimony. He testified positively and entirely without contradiction, either verbal or circumstantial, that at the time of the accident he (the witness) was walking west on the south side of Fayette Street, between Frederick and Gay, and saw the plaintiff on the sidewalk on the south side of Fayette Street, east of Gay, and east of the pedestrians' crossing at Gay. At this time the witness saw three cars abreast, crossing Gay Street, proceeding east; the one nearest the curb being an automobile, the one next to the left being a laundry truck, and the third, still to the left, being the defendant's taxicab. At this time he saw the plaintiff leave the sidewalk, running in a northeasterly direction across Fayette Street. His testimony is that the plaintiff was barely able to miss the automobile and the laundry truck, and ran directly in the path of the taxicab, resulting in his being hit and knocked down; that the taxicab stopped immediately, and that the body of the plaintiff was thrown forward and lay to the south of the center line of Fayette Street, about five feet in front of the car; that the back of the cab was about eighteen or twenty feet east of the pedestrians' walk; that, at the time the plaintiff left the sidewalk, the light for traffic on Fayette Street was green; and that those pedestrians or vehicles crossing Fayette Street were confronted with the red light.

Even if we could hold that the testimony of the witness Moore, on behalf of the plaintiff, was contradictory of Skol-

nik's testimony in reference to the state of the lights, which, if contradictory at all, can only be found so by a great degree of speculation and inference upon inference, we would still have the uncontradicted testimony of Skolnik that the plaintiff attempted to cross the street between street intersections at a point where vehicular traffic had the statutory right of way, and at a time when he was taking the greatest risk of being struck by the automobile closest to him or the laundry truck, and with the certainty that he would be hit by a third machine in the place shown to have been occupied at the time by the taxicab. It would, in our judgment, be impossible, under such circumstances, for the minds of reasonable men to differ as to such act being a prominent, decisive and unquestionable act of negligence, and to hold that such act directly contributed to the injury complained of. *Yockel v. Gersladt,* 154 Md. 188, 140 A. 40, and cases there cited; *Balto. & O. R. Co. v. State, use of Good,* 75 Md. 526, 24 A. 14; *Webb-Pepploe v. Cooper, supra.* Under such circumstances the plaintiff is barred from recovery, upon the thoroughly settled and salutary principle that one should not be allowed to recover for injuries sustained, based upon the negligence of the defendant, when his own negligence is shown to have been a contributing cause thereto. It is undoubtedly true that this record shows painful and permanent injury to the plaintiff growing out of this accident; but it also demonstrates beyond question that his own negligent act was the contributing, if not the sole, cause of such injury. It is an unfortunate and distressing result to the plaintiff, but a result under such circumstances as the settled law of this state prevents a recovery on his behalf. There was error in refusing the defendant's first and second prayers, for which the judgment must be reversed, without a new trial.

> *Judgment reversed, without a new trial, with costs to the appellant.*

ADKINS, J., concurs in the result.