RAYMOND THOMPSON *v.* SUN CAB COMPANY, INCORPORATED.

[No. 53, January Term, 1936.]

300

[redacted]

*Decided April 9th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Benjamin Unger* and *Joseph Loeffler*, for the appellant.

*Charles E. Kaufman*, with whom was *James J. Lindsay* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The action in this case was brought by Raymond Thompson, forty-seven years old, against the Sun Cab Company, a corporation, and Joseph D'Assenze, its agent, as joint tort-feasors, for injuries sustained by the plaintiff as a result of his being struck by a taxicab negligently driven by Joseph D'Assenze as the agent of its owner, the Sun Cab Company. The accident occurred, about a quarter after 9, on the rainy night of April 8th, 1935, at the intersection of Bank and Bouldin Streets in Baltimore City. The defendants were laid under rule to state the particulars of their general issue plea, and replied by setting up as their defence that neither the defendants jointly, nor did either of them, either own or operate the taxicab which hit the plaintiff. The parties went to trial, and the single question is the propriety of the court's action in granting, at the close of the plaintiff's case, a prayer instructing the jury that the plaintiff had offered no evidence legally sufficient to entitle him to recover against the defendants. The jury rendered its verdict for the defendants in conformity with this instruction, and the plaintiff appealed.

There were but two witnesses who testified. The plaintiff was one, and the other was the doctor at the hospital

where the plaintiff was taken immediately after the accident. Giving to this evidence all the force of which it is susceptible in either directly or inferentially establishing the facts, the plaintiff failed affirmatively to prove a cause of action against the defendants. In the first place, the plaintiff was bound to produce testimony which would show, or from which it could be inferred, that the two defendants were jointly liable for the wrong alleged. There is not a scintilla of evidence that the defendant Joseph D'Assenze was the agent of the Sun Cab Company. The plaintiff did not identify him as the driver, nor is there any proof whatsoever that this defendant was, at the time of the accident, either the driver of the vehicle or responsible for its operation; or in the vehicle or in the service of the company. If it be conceded that there was testimony tending to establish negligence on the part of the operator of the taxicab and that it was owned by the defendant corporation, the plaintiff, in his action against the two defendants, failed to prove his averment that the two defendants, whom he had united as jointly responsible wrongdoers, were the two wrongdoers who had committed or were responsible for the wrong alleged, and, so, he was not entitled to go to the jury as against the two defendants. *Buckey v. White,* 137 Md. 124, 131, 111 A. 777; *Louis v. Johnson,* 146 Md. 115, 119, 125 A. 895. See *State v. Boyce,* 72 Md. 140, 142, 19 A. 366; *Hambleton v. McGee,* 19 Md. 43, 47; *Barker v. Ayers,* 5 Md. 202.

Since the action was *ex delicto* and a joint liability need not be proved, the variance on the proof in its failing to show the liability of one of the alleged defendants was not necessarily fatal to the plaintiff's right of action, which could have been sustained against one or more or all of the alleged joint tort-feasors as the plaintiff might elect or the evidence establish. So, the verdict and judgment could have been against one joint tort-feasor and for the other. The nonliability of one of the joint tort-feasors did not appear until the close of the plaintiff's case, and objection could then be made as a variance.

The prayer offered put the plaintiff to his election. He could have amended his declaration by asking leave of the court to strike out the defendant against whom his proof had failed, and the cause would then have proceeded against the remaining defendant. Code, art. 75, secs. 39, 43, 44, 45. See article 50, sec. 12; 1 *Poe, Pl & Pr.*, secs. 384, 385, 385A, *infra;* See *Atkinson v. Railway Co.*, 137 Md. 632, 636, 113 A. 110. Here the plaintiff did not amend, and, so, a judgment of *non pros.* would have been properly entered by the court in favor of the defendant whom the evidence had not shown to be liable, if the prayer submitted by the defendants had not gone to any right of recovery by the plaintiff. *Powell v. Bradlee & Co.*, 9 G. & J. 220, 275; *Pendergast v. Reed*, 29 Md. 398, 402, 403; *Herzberg v. Sachse*, 60 Md. 426, 433, 434; 1 *Chitty on Pleading*, *97.

The remaining and principal inquiry is whether or not the plaintiff has a right of action against the other defendant, the owner of the taxicab. On the night of the accident, the plaintiff, who lived on the east side of Bouldin Street, went south on that street to buy cigarettes. Although it was raining when he set out, he had neither umbrella nor raincoat. After he bought the cigarettes, he started to go back. It was then raining hard, and he was walking rapidly north on the east side of Bouldin Street, which is intersected, at right angles, by Bank Street one-half of a block south of the plaintiff's home. When he reached Bank Street, the plaintiff stopped and looked to the right and to the left, and, not hearing a thing, started across the street. He "got near halfway across the intersection" and a taxicab, going west, struck the plaintiff below the kneecap of his right leg with the left side of the bumper and knocked him back to the left, about five feet, with both bones of his right leg broken. He testified that he saw the taxicab, which had stopped, when he got up, but he does not tell where it stopped. Two men approached him from the taxicab and said that they had hit the plaintiff and that they would take him to the hospital, and they did. One of these men gave his

name, which was not that of the defendant, and the name of the other is not known. The plaintiff testified that he was unconscious from the time he was taken into the taxicab until after he was in the hospital.

It does not appear from the record that the traffic at the intersection of the two city streets was controlled by traffic officers, so by the terms of the statute all pedestrians had the right of way at the street crossings, (Code [Supp. 1935] art. 56, sec. 209; *Brown v. Patterson*, 141 Md. 293, 299, 118 A. 653; *Merrifield v. C. Hoffberger Co.*, 147 Md. 134, 140, 127 A. 500; *Deford v. Lohmeyer*, 147 Md. 472, 475, 476, 128 A. 454; *Parr v. Peters*, 159 Md. 106, 150 A. 34), but they did not have this right of way between street crossings, (*Taxicab Co. v. Emanuel*, 125 Md. 246, 93 A. 807; Code, [1935 Supp.] art. 56, sec. 209, p. 764), nor did pedestrians have this right of way over the space within the inner lines of the defined or customary street crossings of the intersecting streets, (*Chasanow v. Smouse*, 168 Md. 629, 632, 178 A. 846; *Dashiell v. Jacoby*, 142 Md. 330, 341, 120 A. 751; *Glenn Riley v. State*, 140 Md. 137, 117 A. 237), although the failure of a pedestrian to cross a street otherwise than upon the street crossing does not make the pedestrian *prima facie* guilty of negligence, although he has thereby forfeited his right of way, (*Nelson v. Seiler*, 154 Md. 63, 76, 139 A. 564; *Lusk v. Lambert*, 163 Md. 335, 337, 163 A. 188; *Matthews v. Pohlmyer*, 167 Md. 689, 176 A. 479, 480; *Legum v. State*, 167 Md. 339, 173 A. 565).

The plaintiff in the case at bar does not put himself on the street crossing over Bank Street, but merely said that he walked up to the street, started to cross, and was hit when he got halfway across the intersection of the streets by a taxicab coming from his right. There is no testimony by which it appears that the accident occurred on the street crossing, and therefore the plaintiff's evidence establishes that the accident was in the intersection of the two streets where the plaintiff had no right of way and where the defendants were not bound to anticipate his presence. *Supra; Brunes' Motor Vehicle Law*,

sec. 22, pp. 65, 66. So, the happening of the accident in the intersection of the two streets was not of itself sufficient to charge the defendants with negligence. Neither was there any testimony to warrant a finding that, at the time of the accident, the taxicab did not have its lights lit, nor that it was moving at too great a speed, nor that it was incompetently or carelessly driven, or out of proper control. There is no primary negligence shown, unless the meager testimony on this record is legally sufficient for a jury to find that the taxicab was to the left of the center of the street when the plaintiff was struck, and that this deviation was the proximate cause of the injury.

It is true that it would have been negligence on the part of the defendant to have been operating, at the time of the accident (*Dwyer v. Chew*, 149 Md. 281, 284, 131 A. 350), his motor vehicle on the wrong side of the center line of the highway either at street crossings, (*Bielski v. Rising*, 163 Md. 492, 494, 163 A. 207; *Brown v. Patterson*, 141 Md. 293, 301, 118 A. 653), or intersections, (*Hendler Creamery Co. v. Friedman*, 160 Md. 526, 530, 154 A. 93), or elsewhere, (*R. & L. Transfer Co. v. State*, 160 Md. 222, 225-227, 153 A. 87), unless conditions for which the defendant was not negligently responsible had made it necessary for the defendant's motor vehicle, in the exercise of reasonable care under the circumstances, to have been temporarily driven to the left of the center line, (*Kaline v. Davidson*, 146 Md. 220, 224, 225, 126 A. 68; R. & L. Transfer Co. v. State, 160 Md. 222, 227, 153 A. 87. See *Sudbrook v. State*, 153 Md. 194, 199, 138 A. 12).

With these rules in mind, the testimony may be considered with reference to the position of the taxicab when the plaintiff was hit. There is no direct evidence where the taxicab was. Its position must be inferred from the point in the intersection of the streets to which the plaintiff had walked at the time of the accident. His testimony on that point is simply: "I started across the street, and I got near half way cross the intersection, and this cab struck me coming west and knocked me back about five feet, I judge, back to the left." He does not state that he

was nearly halfway across Bank Street, but halfway across the intersection of Bank and Bouldin Streets, whose respective widths are unknown. It follows that halfway across the intersection may put the pedestrian over the center line and on the right of way of the taxicab, or it may not, depending as it does on the course of the plaintiff before he was injured. It may be conjectured that the plaintiff had not reached, when he was hurt, the center line of either street, but conjecture and speculation are not the evidential equivalent of a fact. Here the fact was essential to a right of recovery, and the burden was upon the plaintiff to give some affirmative evidence that the fact existed. The mere happening of the accident gave rise to no presumption of negligence on the part of the driver of the taxicab. *Carnaggio v. Chapman,* 131 Md. 285, 289, 290, 101 A. 672; *Havermale v. Houck,* 122 Md. 82, 90, 89 A. 314; *Sullivan v. Smith,* 123 Md. 546, 558, 559, 91 A. 456; *Taxicab Co. v. Emanuel,* 125 Md. 246, 256, 93 A. 807; *Barker v. Whittier,* 166 Md. 33, 38, 39, 170 A. 578.

The plaintiff was forty-seven years old, and there is no evidence that he was not in the full possession of all his senses or that they were not functioning, until he became unconscious after he had been taken to the taxicab which had struck him, and put in it. Notwithstanding there is nothing to indicate that he did not know the location of the place of the accident, the plaintiff leaves that vital fact uncertain. It is the duty of the court to enforce the rule that a plaintiff fails if he does not offer testimony sufficiently definite to be competent to prove the essential elements of his action. For testimony to have probative weight it is not enough that from it the idea or thought may arise that a fact in issue may be possible. Surmise or conjecture is not a sufficient basis for belief in reaching justiciable conclusions on facts. *Thayer's Preliminary Treatise on Law of Evidence,* 516. The plaintiff has the burden of proof not only to show that the harm of which he complains might be caused by the defendant's negligence, but he must show that it was

so caused. *Barker v. Whittier*, 166 Md. 33, 38, 39, 170 A. 578; *Burns v. Eminger*, 84 Mont. 397, 276 P. 437, 441; *Flanigan v. McLean*, 267 Pa. 553, 110 A. 370.

It follows that the plaintiff has not shown affirmatively that the defendant's servant was driving the taxicab on the wrong side of the street at the happening of the accident, and therefore has not offered any evidence of primary negligence on the part of the defendant. An inference of negligence as the cause of an injury cannot be indulged from the mere fact that a pedestrian is knocked down by a taxicab in a place where the taxicab had an equal, if not superior, right, with the pedestrian, to be. *Supra.* Furthermore, the testimony was that his injury was due to his own negligence. After he left the crossing he should have looked, and if he had, the approaching taxicab would have been seen in time for him to have avoided the accident by merely stopping until the taxicab had passed. It is true that, before he stepped off the sidewalk into the street, he testified that he stopped, looked to the right and to the left, and started across. It is significant that, although he had halted on the sidewalk to look, his testimony is that he did not "hear a thing," and that he is silent as to the result of his unobstructed observation. It is not known whether or not he saw the taxicab at this time, but the lack of any testimony of what the plaintiff saw or did not see when he looked is entirely due to the reservations of the plaintiff as a witness. When giving his version of the immediate particulars of the accident, he later testified that no other vehicle was on the street, and there is no proof that the rain, or the plaintiff's posture or anything else affected the visibility of the taxicab. In fact, he did see the taxicab, because his statement was that it had struck him as it was "coming west." The answer, therefore, to his counsel's inquiry when did he see the cab, that he saw the cab when he got up after being knocked down by it, was inconclusive as to time. So, the effect of the plaintiff's testimony is that he voluntarily walked away from the street crossing into the intersection formed by the cross-

ing of two streets, and that, after he had left the sidewalk, it does not appear that while crossing the intersection the plaintiff looked, although his view was unobstructed, to see if the visible motor vehicle was approaching, or made any attempt, by hurrying, stepping aside, or stopping, to avoid the taxicab which struck him and which was not shown to have been negligently operated. By his testimony the plaintiff makes clear that he could, by the exercise of reasonable caution, thus easily have known of the approach of the taxicab and its position with respect to the center of the highway and himself, in time to have kept or taken a position of safety and thus avoided the accident. His failure to use reasonable care was negligence. Since this negligence of the plaintiff appears from his own narrative of the accident and its circumstances, and no other testimony was given, the plaintiff has produced evidence which is consistent with the negligence either of the plaintiff or of the defendant having been the proximate cause of the accident. It has so happened in the appeal at bar that, in his attempt to prove negligence, the plaintiff has proved facts which would establish contributory negligence. In such a state of the plaintiff's testimony, he must not only show affirmatively the negligence of the defendant, but some facts to answer the implications of negligence on his own part that have also arisen from his evidence. "Such proof depends on the gap in his own proof, not on any obligation in advance to disprove his antagonist's case. He has given evidence of something which unexplained destroys his cause of action. He has to explain it, else he has not laid proper foundations to go to the jury. The *onus* on the plaintiff is to show that the defendant's negligence caused the accident, and where the plaintiff gives evidence of a state of things equally consistent with the wrong being caused by his own negligence or by the negligence of the defendant he has not proved his case. Save in this connection the plaintiff has nothing to do with disproof of contributory negligence as the foundation of his case." *Beven on Negligence* (4th Ed.), pp. 155, 156; *Pollock on*

*Torts* (8th Ed.), 443, 444; *Wilson & Son v. Blaustein,* 144 Md. 289, 292, 293, 124 A. 886; *Regent Realty Co. v. Ford,* 157 Md. 514, 521, 146 A. 457; *Campbell & Sons v. United Railways Co.,* 160 Md. 647, 650-653, 154 A. 552; *Yockel v. Gerstadt,* 154 Md. 188, 140 A. 40; *O'Hare v. Gloag,* 243 Mass. 533, 137 N.E. 698; *Thompson v. White,* 56 Cal. App. 173, 204 P. 561.

It follows, from the reasons here stated, that the ruling of the trial court on the prayer must be sustained.

> *Judgment affirmed, with costs to the appellee.*